## UNITED STATES *v.* RYCKMAN.

*(District Court, W. D. Tennessee.　April 29, 1882 )*

CRIMINAL LAW—WITHHOLDING PENSION—REVISED STATUTES, § 5485.

　　The section of the Revised Statutes punishing an agent or attorney, or other person instrumental in prosecuting any claim for pension, who shall wrongfully withhold from a pensioner or claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, is not confined to withholding the *money* actually collected by the agent, but extends likewise to withholding, against the will of the pensioner, the check or treasury warrant coming into his hands, and is intended to protect the pensioner against frauds until the unconditional payment of the money to him. *Held, therefore,* where an agent procured a power of attorney authorizing him to receive the letter containing the treasury warrant, received it from the post-office, assumed to have the authority to indorse it in the name of the pensioner, and passed it by indorsement to a merchant in payment of a small account due by the pensioner to the merchant and in payment of a debt due by the agent himself to the merchant, and took to himself the merchant's due-bill for the balance, that it was an offence against the statute to neglect or refuse to pay the amount due to the pensioner, and this without regard to the authority or the want of authority in the agent to so indorse the check.

Indictment.

The indictment in this case, containing two counts, charged the defendant, as the agent and attorney of one Mary Jane Simmons in the prosecution of her pension claim, with wrongfully withhholding from her a certain portion of the pension granted her by the United States.　The claim was allowed in February, 1881, and on March 4th, following, the pensioner executed the proper vouchers for the sum of $333.86, the amount due her, which were forwarded to the paying agency at Knoxville.　Afterwards, on the same day, the defendant procured Mrs. Simmons to execute to him a power of attorney to receive from the post-office at Dresden all letters addressed to her concerning her pension, and to sign "all papers, acknowledgments, receipts, and vouchers" necessary to carry into effect the power of attorney; but this instrument did not authorize defendant to indorse the pension check.　The defendant then went to a merchant in Dresden, represented that he had the power of attorney, and that it authorized him to indorse the check which would soon arrive, and that Mrs. Simmons desired to purchase goods on credit; the merchant thereupon sold her some $35 worth of goods, she agreeing to pay for the same out of her pension money when it arrived.　The pensioner was an ignorant woman, who could neither read nor write.

Some two or three weeks afterwards the letter containing the check came to the post-office at Dresden, addressed to the pensioner, and having the pension-office stamp printed on the envelope. The defendant, in company with the merchant, went to the post-office, deposited the power of attorney with the postmistress, received the letter, opened it, and indorsed the check as follows:

"MARY J. X SIMMONS. Witness: B. F. RYCKMAN, Attorney, Dresden, Tennessee;" and delivered it to the merchant, who, in payment of the check, credited the pensioner with the $35 due him from her for the goods sold, and credited the defendant also in the sum of about $100 owing from him to the merchant, and gave the defendant a small amount in money, and his note or due-bill, payable to defendant, for the balance. The pensioner did not know of the arrival of her check for some weeks afterwards, was not present when it was indorsed, and first ascertained the fact by inquiry at the post-office, when she sent to the defendant for her money, but he never paid her any of it nor went to see her about it. She then, on learning that Mr. Irvine, the merchant, had cashed her check, had an interview with him. On being advised that the power of attorney did not authorize the defendant to indorse the check, Mr. Irvine paid the pensioner the full amount of the check in money, except the $35 due him from her, and at once notified the pension agency at Knoxville, and the commissioner of pensions at Washington, of the facts, and made several demands upon the defendant for the note or due-bill given him; but the latter refused to surrender it, and it was not in his possession at the trial. On the back of this check was the following notice, printed in red ink: "NOTICE—The payee's indorsement on this check must correspond with signature to the voucher for which the check was given. If the payee cannot write, his or her mark should be *witnessed*, and the witness state his or her residence in full." The check was dated March 8, 1881. It was conceded by the defendant's counsel in argument that if the indorsement by the defendant of the pensioner's name on the check had been duly authorized by the power of attorney, and there were no law making such instruments concerning pensions void, the defendant, under the facts of the case, would be guilty; but it was contended for the defendant that the power of attorney being void in law, and not in terms authorizing the indorsement, the money had been paid by Irvine on a forged indorsement; that his due-bill to the defendant was also void, and that the government was, not-

withstanding, liable to the pensioner for the money; and that as the defendant had received no *money* for the check, except about five dollars, less than the fee allowed him by law, and Irvine had paid the proceeds of the check to her there had been no withholding, and the court was requested to so instruct the jury.

*John B. Clough,* Asst. U. S. Atty., for the United States.

*Henry W. McCorry,* for defendant.

HAMMOND, D. J., (*charging jury.*)  The indictment in this case charges a violation of section 5485 of the Revised Statutes, which is as follows:

"Any agent or attorney, or other person instrumental in prosecuting any claim for pension or bounty land, who shall directly or indirecty contract for, demand, or receive, or retain any greater compensation for his services or instrumentality in prosecuting a claim for pension or bounty land than is provided in the title pertaining to pensions, or who shall wrongfully withhold from a pensioner or claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, or the land-warrant issued to any such claimant, shall be deemed guilty of a high misdemeanor, and upon conviction thereof shall, for every such offence, be fined not exceeding $500, or imprisoned at hard labor not exceeding two years, or both, at the discretion of the court."

The statute, you will perceive, prescribes the punishment for two offences in relation to the prosecution of a claim for pension,—one, the contracting for, demanding etc., of greater compensation for the agent's services than allowed by law; the other, the withholding by the agent of the whole or any part of the pension or claim allowed; and the case under consideration relates only to this latter offence.  The plain purpose of all those stringent provisions of the pension laws which the district attorney has read in your hearing is to secure *absolutely* to the pensioner the bounty of the government.  It cannot, on any pretext, be lawfully diverted, directly or indirectly, while in transit to his hands.  It is not assets for the payment of debts, and can be in no way pledged or impounded for that purpose, and all dealings in that direction are null and void.  There is a somewhat analogous policy which protects the salaries of officers of the state and federal governments, and it is generally recognized everywhere.  But here congress has, by the most stringent special legislation, sought to protect these pensioners, so munificently endowed, against all possibility of being defrauded by the agents they employ to collect their dues from the government.

Nothing less than the unconditional payment of the full amount, less the small fee allowed, will discharge the agent from the penal-

ties of this statute, whenever, by any contrivance of his, he comes into possession of the warrants or the money they represent. All else is a wrongful withholding under this statute. It is the duty of the courts and juries to so enforce these legislative commands that there shall be no evasion of them.

The words of the statute do not in terms confine the offence to a wrongful withholding of *money* collected on the claim, which would, of course, be a violation of it, but extend to "the whole or any part of the *pension or claim* allowed or due such pensioner or claimant." If the statute is to be restricted to withholding the *money* actually paid by the treasury on the check or warrant of the government to the agent, it would be very much limited in its operation as a protection to the pensioner. The practice of the department under these pension laws is to send the warrant drawn on the treasury direct to the pensioner, to be paid by the treasurer on demand of the holder by proper indorsements, and every effort is made to prevent this warrant from falling into the hands of the agent, who is prohibited from receiving it, and to whom postmasters are forbidden to deliver it by the postal laws and regulations. The offence cannot be restricted to withholding money collected on valid indorsements, and the statute construed to turn loose all who, by forgery or other frauds, succeed in capturing the warrant, notwithstanding these prohibitions, collect the money or obtain its value, and neglect to pay it to the pensioner.

The argument of the defendant's counsel, and the *instructions* asked for by him, would result in punishing all who withhold the money realized on a pensioner's genuine signature, and in discharging all who obtain and withhold it on his forged signature, because the government, it may be, would remain liable to the pensioner for the amount due, the payment on a forged signature not being in law a payment. This would be a strange result, and I cannot give the instructions asked for.

It was the duty of the defendant to have delivered this check itself to the pensioner, and his failure to do so was a violation of this statute, unless he collected the money on it and paid it to her. Even if the power of attorney operated to authorize the defendant to collect and receive the money, the money itself, when so collected, was under the protection of the statute until paid unconditionally to the pensioner. *U. S.* v. *Hall*, 98 U. S. 343, 354. If you believe from the evidence that the defendant received the check, passed it to Irvine by

indorsing her name upon it, and received for it any cash or credit or property and Irvine's due-bill or note, and thus appropriated the money to his own use, and that he subsequently neglected or failed, on demand, to pay the amount of the check, or any part of it, to the pensioner, it is your duty to find him guilty under this indictment. The fact that Irvine has seen fit to pay the money to her cannot be a defence to the defendant on the facts of this case. Take the case, gentlemen, and consider your verdict.

Verdict of guilty, and new trial refused.

NOTE. Consult the following decisions on this section, (5485, Rev, St.:) *U. S.* v. *Benecke,* 98 U. S. 447; *U. S.* v. *Irvine,* Id. 450; *U. S.* v. *Snow,* 23 Int. Rev. Rec. 78; *U. S.* v. *Fairchilds,* 1 Abb. 74; *U. S.* v. *Marks,* 2 Abb. 531; *U. S.* v. *Chaffee,* 4 Ben. 331; *U. S.* v. *Howard,* 7 Biss. 56; *U. S.* v. *Bennett,* 12 Blatchf. 345; *U. S.* v. *Schindler,* 18 Blatchf. 227; S. C. 10 FED. REP. 547; *U. S.* v. *Connolly,* 1 FED. REP. 779; *U. S.* v. *Dowdall,* 8 FED. REP. 881; *U. S.* v. *Mason,* Id. 412. Compare, also, Sup. Rev. St. pp. 386, 602, and sections 3477, 4745, 2414, 2436, 4747, 5435, 5436, 4783, 5486, Rev. St.

NOTE. See *U. S.* v *Hewitt.* 11 FED. REP. 243.