STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. FIRST STATE BANK OF PAWNEE CITY, APPELLEE: D. W. OSBORN, GUARDIAN, APPELLANT.

FILED JULY 10, 1931. No. 27557.

*Dort & Witte* and *F. H. Wagener,* for appellant.

*C. M. Skiles* and *I. D. Beynon, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY AND PAINE, JJ.

DAY, J.

This is an appeal from a judgment entered in the district court for Pawnee county finding that certain funds deposited in the First State Bank of Pawnee City by D. W. Osborn, guardian of Frank M. Tannyhill, an incompetent person, were not entitled to a priority over other claims against said bank. The First State Bank of Pawnee City was a state bank which was taken over by the guaranty fund commission on February 9, 1925, because of insolvency. The guaranty fund commission continued in possession thereof and operated it as a going bank until

November 17, 1927, when the bank was placed in the hands of a receiver appointed by the district court for said county. The claimant is the guardian of Frank M. Tannyhill, a mentally incompetent, who is a World War veteran, and by reason of mental and physical disability has been determined by the veterans' bureau of the United States government entitled to receive certain compensation and insurance payments from the United States. The guardian has received compensation and insurance for and on behalf of said Frank M. Tannyhill and deposited said funds in the First State Bank of Pawnee City. At the time the bank was placed in the hands of the receiver, there was on deposit in said bank to the account of the guardian the sum of $9.90 in a checking account and $8,972.57 in a savings account, all of which money, with the exception of $500, was derived from and paid by the United States government to the said guardian as compensation and insurance due the said Tannyhill. The guardian filed his claim with the receiver without claiming priority of said funds, and the court on March 7, 1928, allowed the claim as a prior lien on the assets of the bank and the guaranty fund of the state of Nebraska, of which there has been paid a 10 per cent. dividend. Subsequently, on the 29th of April, 1929, the guardian filed a petition in intervention, which was the beginning of this case, setting up the facts and asking that said funds be declared to be government funds and as such entitled to preference over claims of all other claimants and depositors by virtue of the federal statutes. The receiver answered, admitting the amount of the fund, but denied the same were government funds entitled to a priority, and denied that the bank, its officers, directors or stockholders voluntarily turned over the said bank to the department of trade and commerce and did not voluntarily commit the acts of bankruptcy, and further set out that such claim was *res judicata*.

The questions presented by the record in this case are as follows: First. Even if estoppel or *res judicata* does

not apply, and if the funds were admitted to be funds of the United States, do not the provisions of section 3466, U. S. Rev. St., give the United States a prior lien on the assets of the bank for the funds deposited by the guardian, as against the other depositors of the bank? Second. Were the funds in question, when deposited in the bank by the guardian, the funds of the United States, and therefore entitled to priority under section 3466, U. S. Rev. St.? Third. Was the allowance of the claim of the guardian as a claim against the guaranty fund as a prior claim against the assets to the bank *res judicata* by which the guardian is estopped from now claiming priority as against all other claims?

If this deposit was funds of the United States, the question of the priority of the lien created by section 3466, U. S. Rev. St., over the lien created by the state statute in favor of other depositors of the bank has recently been discussed and determined by this court. *State v. Thurston State Bank, ante,* p. 407. Following that decision, we find that, if the deposit is funds of the United States, a lien is created prior to that of the other depositors of the bank.

In another recent case we have discussed the nature of the funds arising from the payment of the United States under the war risk insurance acts. See *State v. Security Bank,* p. 521, *post.* This case presents a similar, though not an identical, proposition. The insured being an incompetent, the money was paid to his guardian. To carry out and accomplish its purpose, congress provided for the protection of such funds. Section 4783, U. S. Rev. St., provides for the punishment of every guardian having charge and custody of the pension of his ward, who embezzles the same. Section 450, 38 U. S. C. A., provides: "Where any payment under this chapter is to be made to a minor, other than a person in the military or naval forces of the United States, or to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be

made to the person who is constituted guardian, curator, or conservator by the laws of the state or residence of claimant, or is otherwise legally vested with responsibility or care of the claimant or his estate * * * And provided further, that the director, in his discretion, may suspend such payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary." The money is paid by the United States for the benefit of the disabled veteran or his beneficiary. The United States, for convenience, paid the money impressed with a trust provision to the guardian. Such guardian could not be required to accept the money; but, if he accepted it, he took it subject to all the provisions imposed by statute. For the further protection of the fund, it is provided by section 556, 38 U. S. C. A.: "Every guardian, curator, conservator, committee, or person legally vested with the responsibility or care of the claimant or his estate, having charge and custody in a fiduciary capacity of money paid, under the war risk insurance act * * * for the benefit of any minor or incompetent claimant, who shall embezzle the same in violation of his trust or fraudulently convert the same to his own use, shall be punished," etc. In *State v. Kilgore State Bank,* 112 Neb. 856, this court held that a deposit by the United States, through its proper agent, of individual Indian moneys in a state bank is entitled, upon failure of said bank, both to priority against the assets of the bank and to the protection of the state guaranty fund, under section 3466, U. S. Rev. St., by reason of being government funds. In the *Kilgore* case, the court states: "But the money was in fact deposited by the United States as a guardian of its wards, through its Indian agent or representative, and it would seem that the law is broad enough in its purpose to cover a case of this kind. This view finds support in the case of *United*

*States Fidelity & Guaranty Co. v. Bramwell,* 295 Fed. 331, which involved the deposit of a large amount of Indian funds in the Bank of Klamath Falls." See, also, *State v. Thurston State Bank, ante,* p. 407. The decision in these cases was based upon the fact that the one who deposited the money was in fact the agent of the United States. We are of the opinion that the guardian in this case is the instrumentality of the United States for the purpose of paying the proceeds of war risk insurance to the benefi-ciary. He is a mere trustee or depositary for the govern-ment. *Manning v. Spry,* 121 Ia. 191; *Tama County v. Kepler,* 187 Ia. 34. In the latter case, it is said: "It is the settled law of the United States and of this state that the guardian in such case 'is nothing more than an agent for the government, and that pension money in his hands is still under its control and management.' " In *Manning v. Spry, supra,* it was held: "That a guardian appointed under state authority, to whom pension money was paid, is nothing more than an agent for the government, and that money in his hands is still under its control and management. Indeed, guardians appointed under state laws are required to make report to the commissioners of pension of their acts and doings with reference to pension money received by them. In the *Hall* case *(United States v. Hall,* 98 U. S. 343) it is held that a guardian appointed under state authority is not bound to accept pension money, and that, if he does, he is amenable to the laws of congress. This being so, it is clear, we think, that the money has not passed into the hands of the pensioner, although paid to his guardian, and by him loaned out for safekeeping, and to secure some return therefrom. So long as the fund remains subject to the control and jurisdiction of the fed-eral government, the state has no right to impair, direct, or control it. It is doubtful if a guardian could be pun-ished by the state courts for mismanagement of pension money. He is amenable to the general government, and in handling pension money he acts as a government official

or agent, and not primarily for the court appointing him."
Under a former pension law, it was said: "The plain pur-
pose of all those stringent provisions of the pension laws
which the district attorney has read in your hearing is to
secure absolutely to the pensioner the bounty of the gov-
ernment. It cannot, on any pretext, be lawfully diverted,
directly or indirectly, while in transit to his hands. It is
not assets for the payment of debts, and can be in no way
pledged or impounded for that purpose, and all dealings
in that direction are null and void." *United States v.
Ryckman*, 12 Fed. 46, 48. The money paid under the war
risk insurance act partakes of the nature of a pension and
of insurance. The exemption sections of the pension laws
have been adopted in the enactment of the war risk in-
surance acts. The guardian is required to make similar
reports to the veterans' bureau. In 21 R. C. L. 247, sec.
13, the rule is well stated: "Throughout the whole period
since the Constitution was adopted it has been the policy
of congress to enact such regulations as will secure to the
beneficiaries of the pensions granted the exclusive use and
benefit of the money appropriated and paid for that pur-
pose. * * * This power of congress to enact such protec-
tive measures cannot well be questioned, for if it may
grant pensions it is difficult to see why it may not pass
laws to protect the fund appropriated for such a benefi-
ciary of the government, certainly until it reaches his hands.
And power to protect the fund from misappropriation,
fraud and unauthorized conversion to the use of another,
and to secure its safe and unimpaired transmission to the
beneficiary, has been claimed and exercised through the
whole period since congress, under the Constitution, com-
menced to grant pensions." The language adopted for the
protection of the proceeds of the veterans' war risk in-
surance is substantially the same as that used for the pro-
tection of pensions. It was used with a knowledge of its
definite meaning, acquired through judicial construction.
Its purpose was to create insurance for the benefit of the

veteran and his dependents. It was the obligation of the government to pay it to those entitled by law to the benefits. Until the money is paid to the beneficiary, the obligation is not discharged. For convenience, in the case of an incompetent, the money is paid to the guardian. In such a case, the guardian is nothing more than an agent of the government and the money in his hands is under its control and management. So long as the fund is subject to the control of the federal government, the state has no right to control it. Where war risk insurance is paid by the United States to the guardian of an incompetent, the money belongs to the United States, and is subject to its control until it reaches the beneficiary designated according to law. In such a case, the guardian is the agent for the government and his authority over the fund is limited and controlled by federal statutes alone.

Except as to $500, which it is stipulated was not proceeds of war risk insurance, the deposit represented funds of the United States, and as such is entitled to priority over claims of other deposits. The judgment of the trial court is reversed and the cause is remanded, with direction to the trial court to enter judgment in accord with this opinion.

REVERSED.