STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. SECURITY BANK OF CREIGHTON, APPELLANT: MAGGIE A. AGLER, ADMINISTRATRIX, APPELLEE.

FILED JULY 10, 1931. No. 27696.

*C. M. Skiles*, *W. A. Meserve* and *I. D. Beynon*, for appellant.

*F. H. Wagener* and *Richard Steele*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ.

DAY, J.

This case arose out of the claim of one Maggie A. Agler, administratrix of the estate of Robert R. Gordon, deceased; a soldier in our army in the World War, against the receiver of the Security Bank of Creighton, on a certificate of deposit in her name, as administratrix, in said bank, which deposit represented the proceeds of war risk insurance. The administratrix claims that she stands in the place of the United States in relation thereto and has a first lien on all the assets of said bank superior to the other depositors. The district court so found, and the receiver appeals.

The Security Bank of Creighton was taken over by the department of trade and commerce on May 17, 1928, and operated by the guaranty fund commission as a going bank until June 4, 1929, on which date a receiver was appointed to liquidate. The administratrix filed her claim on a certificate of deposit which was classified and allowed as a deposit. The claimant filed a petition of intervention in said proceedings claiming that the said deposit was the proceeds of war risk insurance issued by the United States on the life of Robert R. Gordon; who died intestate on December 19, 1919, and claimed that said money was the property of the United States, and that she had a first lien on the assets of said bank under the provisions of section 3466, U. S. Rev. St. The receiver objected to the allowance of the claim because, first, the depositors' lien created by statute was a prior lien upon the assets of the bank, and,

second, the administratrix is not a governmental agency and the deposit was not money of the United States.

Relative to the first question, this court has decided in a recent case the time when the statutory lien of the depositors attaches to the assets of a state bank. In *State v. Thurston State Bank, ante,* p. 407, the material facts are substantially the same as in the instant case and control the question of priorities of liens. It is sufficient to state that under the rules of law therein stated, if the deposit involved is money of the United States, it is a lien upon the assets of the bank superior to the statutory lien in favor of general depositors.

There remains but one question for our determination. Was the deposit made by the administratrix in the Security Bank of Creighton, Nebraska, money of the United States within the comprehension of section 3466, U. S. Rev. St.? The claim of the administratrix is based on the provision of the above statute, which reads as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." In this case, it is not disputed that the officers of the bank at the time the deposit was received knew from what source it came and that such deposit was the proceeds of war risk insurance paid by the United States.

The purpose of the war risk insurance was to benefit the World War veteran and his dependents. Congress could adopt any method which seemed to it best suited to accomplish its purpose. The initial act of October 6,

1917, provided for insurance, "in order to give to every commissioned officer and enlisted man" greater protection for themselves and their dependents. 40 U. S. St. at Large, ch. 105, sec. 400, p. 409. This purpose is reaffirmed in the Act of June 7, 1924, 43 U. S. St. at Large, ch. 320, sec. 300, p. 624, and restated in the Act of March 4, 1925, 43 U. S. St. at Large, ch. 553, sec. 12, p. 1308. The purpose of the statutes providing for war risk insurance is important and helpful in determining the intention of congress as expressed by its legislative acts.

To study and ascertain the intent of congress, let us consider section 454, 38 U. S. C. A., which is as follows: "The compensation, *insurance,* and maintenance and support allowance payable under parts II, III, and IV, respectively, shall not be *assignable; shall not be subject to the claims of creditors of any person to whom an award is made under parts II, III, or IV; and shall be exempt from all taxation."* (Italics ours.)

The insurance provided was not assignable. It was the intention of congress to protect the fund so that it would be directed to the benefit of the veteran and his dependents. This provision was clearly to protect him from himself as well as from others. To accomplish this purpose and to insure with certainty that the funds provided would go directly to the maintenance and support of the veteran and his dependents, it was also provided that it was not subject to the claims of creditors. In *Payne v. Jordan,* 152 Ga. 367, it was held that funds actually paid by the government to the beneficiary of an insurance policy and by her deposited in a bank are not subject to garnishment. To the same effect is *Perrydore v. Hester,* 215 Ala. 268. It was held that it should be exempt from all taxation. *Succession of Geier,* 155 La. 167, holds that the beneficiaries of deceased service men who receive insurance money under the war risk insurance act are not subject to a state inheritance tax. To the same effect is *In re Shaw's Estate,* 224 N. Y. Supp. 344; *In re Estate of Harris,* 179 Minn.

450; *Tax Commission of Ohio v. Rife,* 27 Ohio App. 516; *In re Cross' Estate,* 152 Wash. 459; *Manning v. Spry,* 121 Ia. 191; *Watkins v. Hall,* 107 W. Va. 202; *Wanzel's Estate,* 295 Pa. St. 419.

It is evident from these foregoing provisions that congress intended the money to go to the veteran and his dependents. It provided for every foreseen contingency to retain control of the money until it was placed in the hands of the beneficiary. To accomplish this beneficent purpose, it has surrounded the money with every safeguard to protect it. It has placed the funds upon a plane analogous to a trust impressed with certain specific conditions. It was intended to discharge in a measure the moral obligation of the United States to the veterans of the World War, not in the sense that it was a gratuity, for it was not, but it did give the soldier in the war an opportunity to contract with the United States for the benefit of himself and his dependents. The veteran could name the beneficiary within certain limits provided by law. The monthly payments would be made to such beneficiary. When, as in this case, the named beneficiary died, and no other beneficiary had been named by the insured, then the law provides that there shall be paid to the estate of the insured the present value of the remaining unpaid monthly instalments of the insurance so awarded to such person. 38 U. S. C. A. sec. 514. The commutated monthly payments had been paid to the administratrix in this case. The payment was made to her subject to all the conditions imposed by law upon the fund. It is not subject to taxation. It is not subject to the payment of debts. *In re Estate of Hallbom,* 179 Minn. 402; *In re Cross' Estate,* 152 Wash. 459; *Payne v. Jordan,* 152 Ga. 367.

Furthermore, it is provided by law that the insurance shall be payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law or sister-in-law or to any or all of them. 38 U. S. C. A. sec. 511. This section of the statutes definitely limits the

persons to whom the money can be paid. This insurance was never provided for the benefit of creditors. It was specifically provided that creditors should not benefit from it. It was certainly not intended that the creditors of a third party, in this case the depositors in the Security Bank, should benefit from the fund.

But the receiver argues that the funds, when paid to the estate of the deceased veteran, become the assets of the estate. The argument in *In re Estate of Hallbom,* 179 Minn. 402, is so concise and sound that we quote and adopt it as follows: "Having in mind the repeatedly expressed and obvious purpose of the act, we are of the opinion that reason and principle require us to hold, as we do, that the payment of the funds to the estate of the insured is merely a matter of procedure, and the representative of the estate is to distribute it only to persons included 'within the permitted class.' The persons who would receive the money receive it as beneficiaries under the policy and not as heirs at law. *Cassarello v. United States,* 271 Fed. 486; *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414; *Wilson v. Sawyer,* 177 Ark. 492, 6 S. W. (2d) 825; *Perrydore v. Hester,* 215 Ala. 268, 110 So. 403, 405; *Tax Commission of Ohio v. Rife,* 119 Ohio St. 83, 162 N. E. 390; *Wanzel's Estate,* 295 Pa. 419, 145 A. 512; *Watkins v. Hall,* 107 W. Va. 202, 147 S. E. 876; *Payne v. Jordan,* 152 Ga. 367, 110 S. E. 4; Id. 36 Ga. App. 787, 138 S. E. 262; *Sutton's Ex'r v. Barr's Adm'r,* 219 Ky. 543, 293 S. W. 1075. There are cases to the contrary. *Whaley v. Jones,* 152 S. Car. 328, 149 S. E. 841, and cases therein cited; *Hugus v. United States,* 24 F. (2d) 247; *Estate of Greiner,* 195 Wis. 332, 218 N. W. 437; *Condon v. Mallan,* 58 App. D. C. 371, 30 F. (2d) 995; *Branch B. & T. Co. v. Brinkley,* 196 N. Car. 40, 144 S. E. 530; *National Union Bank v. McNeal,* 148 S. Car. 30, 145 S. E. 549."

We hold that, after the designated beneficiary's death, war risk insurance is payable to the estate of the insured for distribution to persons then living within permitted class, as beneficiaries, and not as heirs at law. The statute

provides it shall only be paid to the permitted class. The veteran himself could not have designated any other as beneficiary. and congress did not intend that a failure to name a beneficiary would carry the fund to persons, whom the veteran himself was prevented by law from naming as beneficiaries. In other words, he will not be held to accomplish by neglect what he could not do by the exercise of thoughtful care. Such a rule would defeat the obvious and definitely expressed intention of congress.

For convenience, the money is paid to the administratrix, to be paid to the heirs within the permitted class of beneficiaries. A number of cases already cited liken the procedure to that followed in the case of damages recovered by an administrator in actions for wrongful death. In such a case, the money is not an asset of the estate. The administrator is a mere trustee to receive and pass on the funds to those entitled to them. Lastly, congress completed the control of the United States over this trust fund by providing that, in case the purpose of the trust failed, the money should revert to the United States. 38. U. S. C. A. sec. 512, provides: "That no payment shall be made to any estate which under the laws of the residence of the insured or the beneficiary, as the case may be, would escheat, but same shall escheat to the United States and be credited to the United States government life insurance fund."

To summarize, the administrator holds the money for a certain definite purpose only; if that purpose fails, it reverts to the United States. It is the money of the United States until it reaches the beneficiary, intended by the trust created. The congress of the United States created a channel through which this money is to reach the dependents of the veteran. It must not be diverted from that channel. It cannot be so diverted. As money of the United States, it is entitled to priority of payment by virtue of the statutes of the United States. The judgment of the trial court is

AFFIRMED.