# Smith, Special Deputy Banking Commissioner, v. Spicer's Guardian and Committee.

(Decided May 10, 1932.)

W. L. KASH for appellant.

O. H. POLLARD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Sam Spicer, as guardian and committee for Letcher Spicer, recovered judgment in the Breathitt circuit court against J. Bryan Smith, special deputy banking commissioner and liquidating agent of the Hargis Bank & Trust Company, for the sum of $6,070.80, and his claim was adjudged to be preferred, prior, and superior to all other claims against the bank. From that judgment the latter has appealed.

By undisputed allegations of the petition it is made to appear that in 1918, while in the military service of the United States in the World War, Letcher Spicer, by reason of mental derangement, became, and has since been, totally disabled and incompetent to manage his estate. Under orders of the Breathitt county court, Sam Spicer is the duly appointed, qualified, and acting guardian and committee for the incompetent soldier.

For many years prior to May 5, 1930, the Hargis Bank & Trust Company conducted a general banking business at Jackson in Breathitt county, but, because of insolvency [Commonwealth ex rel., Etc., v. Hargis Bank & Trust Company, 233 Ky. 801, 26 S. W. (2d) 1045], it was on that date taken over by the state banking department and placed in charge of J. Bryan Smith, special deputy banking commissioner, for the purpose of liquidation. At the time the bank closed and ceased to transact

business, Sam Spicer, as guardian and committee, had on deposit the sum of $6,070.80, which had been paid to him by the United States as compensation and war risk insurance due his ward, Letcher Spicer. The war risk insurance had been paid in monthly installments of $57.50 under the permanent disability provision.

The answer controverted only that part of the petition alleging that the claim of plaintiff was preferred, but attempted to set up certain affirmative defenses which it is unnecessary to enumerate since they are not material to a proper decision of this appeal. The chancellor sustained a demurrer to the answer, but overruled a demurrer to the petition, and, defendants declining to further plead, entered judgment for plaintiff as above indicated.

At the outset it may be noted that appellee does not cite any statute of this state or any decision of its courts as sustaining his position or supporting the chancellor's finding, and, in fact, none can be found. On the other hand, it has been held by this court that a guardian or other fiduciary who deposits trust funds in a bank upon interest becomes merely a creditor of the bank, and is not entitled to priority or preference as against general creditors in the distribution of its assets when it becomes insolvent. Fidelity & Casualty Co. of N. Y. v. Farmers' & Merchants' Bank, 223 Ky. 32, 2 S. W. (2d) 1048; New Farmers' Bank Trustee v. Cockrell, Receiver, 106 Ky. 578, 51 S. W. 2, 21 Ky. Law Rep. 177. It follows therefore that, if authority for giving preference to claims of this or like character is to be found, it must be in federal statutes or in cases from other jurisdictions.

A careful examination of the statutes of the United States fails to reveal any express provision authorizing the preference given to this claim, and none has been pointed out, although the brief prepared by eminent counsel for appellee discloses extensive research and study of authorities. Furthermore, we find nothing in the acts of Congress relating to adjusted compensation and war risk insurance from which to draw a reasonable inference that such preference is warranted or was intended. There are, however, a number of cases from courts of other states that are in agreement with the chancellor's finding. See State ex rel., Etc., v. Security Bank of Creighton, 121 Neb. 521, 237 N. W. 620; State ex rel., Etc., v. First State Bank of Pawnee, 121 Neb. 515,

237 N. W. 623; Butler v. Cantley, Comr. of Finance (Mo. App.), 47 S. W. (2d) 258, and authorities cited in those cases. Some of those cases are cited in brief for appellee, and no doubt were relied on and had a determining effect in the court below. But in none of them is it claimed that either the adjusted compensation or war risk insurance acts expressly gives preference or priority to funds held by fiduciaries for incompetent soldiers. Apparently they are premised on the theory that funds derived under these acts are moneys of the United States until they actually reach the hands of the soldier himself, and, when deposited to the credit of a guardian or committee in a bank which proves to be insolvent, are entitled to preference under section 3466, Revised Statutes of the United States (31 USCA, sec. 191), which reads:

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The opinion in Butler v. Cantley, supra, refers to the purpose as expressed in the federal statutes to give protection to those enlisted in military or naval service, and to the safeguards thrown around funds payable under the acts for the benefit of veterans and their dependents, such as exemption from attachment for debt, from taxation, etc., and to the provision for escheat to the United States in certain circumstances; and, reasoning from these provisions, reaches the conclusion that the spirit and purpose of the acts is to retain in the federal government the ownership and control of such funds until they actually come into the hands of the soldier or his dependents, as the case may be. Other cases follow the same line of reasoning to the same conclusion, and some of these set out the provisions of the acts authorizing the withholding of payments to the guardian when warranted by circumstances, and the penalty prescribed for embezzlement of funds by a guardian. They all in

effect hold that the guardian is merely an agent of the government; his possession of the funds being in fact possession by the United States.

As supporting the theory that a fund deposited by the guardian of a soldier is money of the United States, the case of United States Fidelity & Guaranty Co. v. Bramwell (D. C.), 295 F. 331, is cited. But in that case the United States, through the superintendent of the Kalmath Indian Reservation, caused funds derived from the sale, rent, etc., of tribal lands to be deposited in a bank, and the guaranty company executed and delivered to the United States a bond securing the deposit. Because of insolvency of the bank, the guaranty company paid the amount of the deposit to the United States. Under a statute subrogating the surety who pays money on a bond in such instances to all rights of the United States, it was held that the guaranty company was entitled to payment of its claim in preference to general creditors. However, in the opinion, it is pointed out that, both by the terms of the deposit and the provision of the bond, the debt was due from the bank to the United States, and that, under treaty with the Indians and acts of Congress, the United States is guardian of the Indians on the reservation, and as such has the management of their affairs and the collection and disbursement of funds intended for their benefit. Obviously that case has no application here, and furnishes no basis for the contention that the debt in question was due from the Hargis Bank & Trust Company to the United States, and therefore entitled to preference under the federal statutes. Rev. St. U. S., sec. 3466 (31 USCA, sec. 191). In that case the United States was the guardian, deposited the fund and required a bond as security therefor, while in the instant case an individual acting under orders of the state court is the guardian and deposited the ward's funds in the bank in his name, and neither the guardian nor the bank has been required to execute bond to the United States to secure the deposit. Unquestionably the money in that case was money of the United States, and as such was entitled to preference by virtue of section 3466, supra, and, under the acts of Congress relating to the administration of the affairs of the Indians, the United States was authorized to sue and enforce payment of the deposit.

As we view the matter, the question whether this fund was money of the United States, the one question

on which the decision of this case must turn, may be determined by the application of a simple, though decisive and infallible, test, to which strained construction and doubtful inferences and implications must give way. If the payment by the United States to the guardian was to the extent thereof a complete and final discharge of its debt and liability to the soldier, then the funds passed from the possession and control of the government, and became the estate of the ward. To hold otherwise would in effect hold that, in the event of insolvency of the guardian and his surety, the United States would be required to again pay so much of the fund as did not reach the hands of the soldier.

In this state, as in most, if not all, other jurisdictions, a guardian has the custody and control of the personal estate of his ward, and may collect and receive debts and obligations due the ward (Ky. Statutes, sec. 2030), and payment to him will operate as a complete discharge of the debtor. Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 14 S. Ct. 678, 38 L. Ed. 528; Taylor v. Bemiss, 110 U. S. 42, 3 S. Ct. 441, 28 L. Ed. 64; 12 R. C. L. 1125; 21 R. C. L. 29; 28 C. J. 1130, 1131, and cases cited therein.

The provisions in the acts of Congress relating to compensation and war risk insurance authorizing withholding payments and for escheat in some circumstances clearly applies to money due, but which has not been paid to the soldier or to his guardian or committee, and there is no provision whereby funds may be repossessed or escheated by the United States after payment has been made. These acts specifically authorize payments to the guardian appointed under laws of the state of the residence of the claimant. Manifestly it was the intent of Congress that payment to a guardian would be payment to the ward and would operate as a discharge of the government's obligation to the latter, and the acts have been so construed by those charged with their administration since payments may be and are made to guardians without requiring bond to be executed to the United States.

We see no escape from the conclusion that the United States parted with possession and control of funds paid to the guardian and was thereby released and discharged of liability to the soldier; therefore the debt of the bank is due to the estate of the incompetent and as such is

controlled solely by the laws of this state with respect to preference or priority, and it follows that the court erred in overruling the demurrer to the petition.

Judgment reversed for proceeding in conformity with this opinion.