G. H. Puffenbarger, *Guardian, etc. v.* L. R. Charter, *Banking Comr., et al.*

(No. 7387)

*and*

Willie Clifton Tompkins, *Guardian, etc. v.* L. R. Charter, *Banking Comr., et al.*

(No. 7393)

Submitted July 30, 1932.   Decided September 7, 1932.

*Claude L. Smith,* for relator Puffenbarger.
*C. R. Summerfield,* for relator Tompkins.
*J. Horner Davis, 3d,* and *Philip P. Steptoe,* for respondent Banking Com'r.

Hatcher, President:

In each of these proceedings the ward of the guardian was a beneficiary of a U. S. soldier who died in service during the World War; compensation for the ward was paid to the guardian by the U. S. Government; the guardian deposited the payment in a state bank which has since become insolvent; and the guardian asks now that this deposit be treated as a preferred claim against the bank.

The position of each petitioner is that when he accepted the payment for his ward, he then became the agent—"a

trustee or depositary"—of the federal government, and that while the money remains in his hands it is the money of the United States and entitled to the preference prescribed by the federal statute for federal deposits. This position is supported expressly by *State ex rel. Spillman* v. *Bank,* (Neb.) 237 N. W. 623; *Manning* v. *Spry,* 121 Iowa 191 and cases cited in the two opinions. Those cases rely largely on the provisions of U. S. Code, Title 38, sec. 450, that payments to a guardian may be suspended if he fails to render an account to the federal director showing the application of the funds to the benefit of the ward, and of sec. 556, that a guardian embezzling such funds shall be punished.

1. Amendments to sec. 450, made in 1928 and 1930, detail meticulously how suspended payments in the hands of the director shall be disposed of; but nowhere in the federal enactment is there any specific provision whatever for federal control over or recovery of the payments theretofore made to a guardian, except in case of escheat. To the contrary, the director is empowered only "to make proper presentation" to the court which appointed the guardian, if the latter is "not properly executing the duties of his trust". This limitation of the powers of the director is inconsistent with the theory of federal control over the guardian or over the money after payment to him.

2. Punishment of an embezzling guardian was upheld in *U. S.* v. *Hall,* 98 U. S. 343, a case strongly relied on by petitioners and by the Nebraska and Iowa cases above cited. The Hall opinion contains some casual expressions which do favor the position of the petitioners; but the pith of the opinion is merely that a guardian is not obliged by the federal act to receive money for his ward, but if he does so, he takes it subject to the conditions lawfully imposed by the federal statute, one of which is federal punishment for embezzlement. The Hall opinion (p. 358) expressly repudiates the proposition that the guardian becomes a federal agent upon accepting federal funds, in the following language: "The theory of the defendant that the act of Congress augments, lessens or makes any change in respect

490

to the duties of a guardian under the state law is entirely erroneous.''

The possession of the guardian is consistently regarded as the possession of the ward. 28 C. J. 1128; 12 R. C. L. 1123. Finding nothing in the federal statute to disturb that conception we are forced to conclude as did the supreme court of Kansas (after an exhaustive discussion of this subject) ''that the intervention of a guardian does not leave the pension funds still in the hands of the government * * * but when paid to the guardian, the title and possession have both passed from the government.'' *State ex rel. Smith* v. *Commissioners*, 294 P. 915, 921. The supreme court of the United State indicated its approval of the Kansas decision by denying a writ of certiorari therein. See 283 U. S. 855.

The writs are accordingly refused.

*Writs refused.*