## SPICER v. SMITH, SPECIAL DEPUTY BANKING COMMISSIONER.

No. 388.   Argued January 19, 20, 1933.—Decided March 13, 1933.

Messrs. *William Marshall Bullitt* and *Leo T. Wolford,* with whom *Mr. O. H. Pollard* was on the brief, for petitioner.

*Mr. Jesse I. Miller* for respondent.

*Messrs. Wm. H. Oppenheimer, Frank C. Hodgson,* and *Montreville J. Brown,* by leave of Court, filed a brief on behalf of *J. N. Peyton,* Commissioner of Banks of Minnesota, as *amicus curiae.*

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner was a United States soldier in the World War and while in the service suffered permanent mental incompetency. He became entitled to receive from the United States war risk insurance and disability compensation.[1] September 19, 1919, the county court of Breathitt county, Kentucky, appointed for him the guardian above named who qualified and has ever since acted as such. The United States paid to the guardian

---

[1] See Arts. III and IV, War Risk Insurance Act of October 6, 1917, 40 Stat. 405, 409. Titles II and III, World War Veterans' Act, 1924, approved June 7, 1924, 43 Stat. 615, 624; 38 U. S. C., §§ 471–502, 511–518.

the installments due his ward. The guardian deposited them in the Hargis Bank and Trust Company. It became insolvent and February 5, 1930, conformably to the laws of the State, all its assets were taken over by respondent acting as special deputy banking commissioner and liquidating agent. At that time the guardian had on deposit $6,070.80 derived from such payments. The assets of the bank were not sufficient to pay more than one-half the total owing to depositors. Claiming priority under R. S. § 3466,[2] the guardian demanded payment of his deposit in full. Respondent held that petitioner was only entitled to share ratably with other creditors and refused to pay.

Petitioner brought this suit in the circuit court of Breathitt county to enforce the asserted priority. That court gave him judgment as prayed. The court of appeals reversed on the ground that the bank was not indebted to the United States on account of the deposit made by the guardian. 244 Ky. 68; 50 S. W. (2d) 64. The question has not been considered here and, decisions upon it in the state courts being in conflict,[3] we granted a writ of certiorari. 287 U. S. 590.

---

[2] " Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U. S. C., § 191.

[3] The decisions supporting petitioner's contention are: *State ex rel. Spillman* v. *First State Bank*, 121 Neb. 515; 237 N. W. 623. *Anderson* v. *Olivia State Bank*, 186 Minn. 396; 243 N. W. 398. Those opposed are: *Shippee* v. *Commercial Trust Co.*, 115 Conn. 326, 161 Atl. 775. *Puffenbarger* v. *Charter*, 112 W. Va. 488; 165 S. E. 541.

Petitioner relies upon the clause of § 3466 declaring that whenever any person indebted to the United States is insolvent the debts due to the United States shall first be satisfied. He asserts that, under Acts of Congress later to be considered, the war risk insurance and disability compensation paid to a guardian of an incompetent veteran remains the money of the United States so long as it is subject to his control and suggests that the guardian is a mere instrumentality of the United States for the disbursement of such money for the benefit of the veteran. And he maintains that the deposit here involved is money of the United States and that the bank is indebted to it therefor.

The pertinent substance of the provisions invoked by petitioner follows. Section 21 (1) and (2) of the World War Veterans' Act, 1924, provides that where any payment under the Act is to be made to a person mentally incompetent, it may be made to the person who is constituted guardian by the laws of the State or is otherwise legally vested with responsibility or care of the claimant or his estate. It authorizes the director to suspend payments to a guardian who shall neglect or refuse to render to the director from time to time an account showing the application of such payments for the benefit of the incompetent.[4] Section 22 declares that such payments shall not be assignable or subject to the claims of creditors and that they shall be exempt from taxation, but makes them subject to claims of the United States under the Act against the veteran.[5] Sections 21 (3) and 26 provide that in specified cases insurance and disability com-

Cf. *State ex rel. Sorenson* v. *Security Bank*, 121 Neb. 521; 237 N. W. 620. *Butler* v. *Cantley* (Mo.), 47 S. W. (2d) 258. *Manning* v. *Spry*, 121 Iowa 191; 96 N. W. 873.

[4] 43 Stat. 613, as amended by § 2, Act of July 2, 1926, 44 Stat. 791; § 2, Act of May 29, 1928, 45 Stat. 964. 38 U. S. C., § 450.

[5] 43 Stat. 613. 38 U. S. C., § 454.

pensation remaining unpaid or in the hands of a guardian at the death of the veteran shall escheat to the United States.[6] Section 214 provides that where an incompetent veteran receiving disability compensation disappears, the director may make payments to his dependents.[7] Section 505 provides for punishment of guardians who shall embezzle such funds.[8]

The guardian, appointed by the county court, was by the laws of the State given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. Ky. Stats., § 2030. And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such installments. *Taylor* v. *Bemiss*, 110 U. S. 42, 45. *Lamar* v. *Micou*, 112 U. S. 452, 472. *Maclay* v. *Equitable Life Assurance Society*, 152 U. S. 499, 503. *Martin* v. *First Nat. Bank*, 51 F. (2d) 840, 844. *In re Estate of Stude*, 179 Iowa 785, 788; 162 N. W. 10. *State ex rel. Smith* v. *Shawnee County Comm'rs*, 132 Kan. 233, 243; 294 Pac. 915; certiorari denied 283 U. S. 855. Schouler, Dom. Rel., 6th ed., § 892.

The provisions for exemption, non-assignability and suspension of payments plainly imply the passage of title from the United States to the veteran. The denunciation of embezzlement by guardians is not inconsistent with that intention. These regulations, like many to be found in pension laws, disclose a purpose to safeguard to bene-

---

[6] Section 21 (3) added by § 5, Act of July 3, 1930, 46 Stat. 993. 38 U. S. C. § 450. Section 26, World War Veterans' Act, 1924, 43 Stat. 614, as amended by § 3, Act of July 2, 1926, 44 Stat. 792. 38 U. S. C., § 451.

[7] Added by § 21, Act of July 3, 1930, 46 Stat. 1000. 38 U. S. C., § 501a.

[8] Added by § 20, Act of March 4, 1925, 43 Stat. 1312. 38 U. S. C., § 556.

ficiaries the appropriations and payments made for their benefit (*United States* v. *Hall,* 98 U. S. 343, 353. *Westfall* v. *United States,* 274 U. S. 256) and evince special solicitude for the protection of veterans who by reason of mental incompetency are unable to protect themselves. The clauses subjecting such payments to claims of the United States against the veteran and providing for escheat to the United States make against petitioner's claim. Neither would be appropriate or necessary if the money paid to such guardian continued to belong to the United States until actually disbursed by him for the veteran's benefit.

Petitioner cites *United States* v. *Hall, supra.* The question there was whether Congress has power to prescribe punishment for the embezzlement by guardians of pension money paid them in behalf of their wards. The indictment showed that the money alleged to have been embezzled was the property of the accused guardian's ward. The court held that to insure transmission unimpaired to the beneficiary the United States might annex such conditions to the donation as it deemed appropriate and that the guardian was bound to accept the payment subject to the terms of the grant and that Congress had power to protect its gift until it passed into the hands of the beneficiary. There is no suggestion in the opinion that the United States had any interest as owner in the money embezzled. The power of Congress to punish such misappropriation is not limited to acts causing loss to the United States. *Westfall* v. *United States, supra,* 258–259. Petitioner also cites *Bramwell* v. *U. S. Fidelity & G. Co.,* 269 U. S. 483. But in that case the United States itself was the guardian and through its officer, the superintendent of an Indian reservation, made the deposit which upon insolvency of the bank was held a preferred claim under § 3466. The case is not in point, as here the guardian was appointed pursuant to state law

to act for and on behalf of his ward. He was not an agent or instrumentality of the United States. *Shippee* v. *Commercial Trust Co.*, 115 Conn. 326, 161 Atl. 775. *Puffenbarger* v. *Charter*, 112 W. Va. 488; 165 S. E. 541. *State ex rel. Smith* v. *Shawnee County Comm'rs, supra.* It results that the deposit in question does not belong to the United States and, as indebtedness to it is essential to priority, the guardian's claim under that section is without merit. Other contentions made by petitioner are so plainly inapplicable here as not to require discussion.

*Judgment affirmed.*