# Maryland Casualty Co. v. Hurt, Special Deputy Banking Commissioner.

(Decided June 6, 1934.)

EUGENE R. ATTKISSON for appellant.

LAYMAN & LAYMAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On January 12, 1932, the Union Bank of Stithton, which had theretofore been doing general banking business under the laws of the state of Kentucky at Stithton in Hardin county, closed its doors because of insolvency, and the management of its affairs was taken over by the state banking department. C. L. Hurt, as special deputy banking commissioner and liquidating agent, was placed in charge of the bank. This bank was located and doing business within a military reservation of the United States formerly known as Camp Knox, but now known as Fort Knox. When the bank was closed because of insolvency, Company K, Tenth Infantry, Camp Knox, Ky., had on deposit therein the sum of $3,962.23, and William A. Callaway, commanding officer of that company, was custodian of such fund. This fund, to the extent of $1,000, was secured by a bond of the Maryland Casualty Company. It also had on deposit at the date of its closing the sum of $1,979.90 made up of different funds of which C. A. Bagby, major of Infantry, and R. O. T. C. officer, Fifth Corps Area, was the custodian. This deposit was likewise secured to the extent of $1,500 by a bond of the Maryland Casualty Company.

F. N. Latimer, first lieutenant, Tenth Infantry, as custodian of Company K recreation fund and as custodian of Company K store fund and custodian of Company K, Tenth Infantry, fund, had on deposit the sum of $5,846.59. This deposit was made up of sums credited to the athletic fund and motion picture fund, etc. The Maryland Casualty Company, as surety for the

bank, had also executed a bond conditioned that the bank would faithfully account for and pay over all moneys deposited in these accounts to the extent of $10,000, and the United States Fidelity & Guarantee Company had executed a like bond for that purpose in the sum of $5,000.

The Maryland Casualty Company, because of insolvency of the bank, was required to and did pay to the custodian and depositors the amount of its liability on these bonds. Its proportion of the latter obligation being $3,366.21. By the terms of these several bonds, the Maryland Casualty Company became and was subrogated to all rights of the obligee as against the bank to the extent of the amounts which it had been required to pay the obligee thereon. By written assignment the claims were assigned to the Maryland Casualty Company, and it, in due time and in proper manner and form, made proof of its claim under the assignments. It asserted these claims as preferred claims and demands against the bank.

C. L. Hurt, as special deputy banking commissioner, refused to recognize these claims as preferred claims and demands, and treated the casualty company as a common creditor, and tendered and offered to pay a 10 per cent. distribution made to common creditors. The Maryland Casualty Company refused to receive such payment of its claim on that basis, and instituted this action setting up in substance the foregoing facts, and alleged that all of the funds deposited to the credit of the several custodians were public funds of the United States government and belonged to the personnel and army units as a whole, and that, because of the insolvency of the bank, it was, under the laws of the United States, entitled to preference and priority. It asked for judgment for the amount of its claim with interest, and that it be adjudged to have a preferred claim prior and superior to the claims of any and all persons upon all the assets of the bank.

By original answer the special deputy banking commissioner denied the allegations of the petition, but by an amended answer admitted all material allegations of the petition, except that the funds on deposit were public funds, and specifically denied that they were public funds or moneys belonging to the United States.

On the issues as thus made proof was heard, and it

was adjudged by the chancellor that the plaintiff re-cover the amount on its claims as set forth in various paragraphs of its petition subject to credit representing the percentage theretofore paid as distribution on gen-eral and nonpreferred claims which under stipulation plaintiff had received and accepted without prejudice to its claim to preference and priority. The claims were disallowed as preferred claims, but were adjudged to be general and ordinary claims not entitled to preference, and that they should be so treated by the special deputy banking commissioner in making distribution to credi-tors. The Maryland Casualty Company is appealing.

Appellant is claiming priority on all its claims under section 3466, Revised Statutes of the U. S. (U. S. C. title 31, sec. 191 [31 USCA sec. 191]) which reads:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority es-tablished shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

If appellant's claim of priority is to be sustained, it must be under this section of the federal statute. No other section of the federal or state statutes is relied upon by appellant, and none has been found giving preference to such claims; therefore, the correct dispo-sition of this appeal is made to depend on whether the obligations of the bank growing out of these deposits are debts due the United States, and that, necessarily, involves the question of right and title to the funds.

The only witnesses introduced on the hearing were C. L. Hurt, special deputy banking commissioner, and Lieut. F. N. Latimer, referred to in the pleadings as custodian of some of the funds. The evidence of the former related in the main to the correctness of the amounts claimed, and that is immaterial here, since it is admitted by pleading. Lieut. Latimer testified that these funds were derived from the sale of merchandise

that is, the profits representing the difference between the cost price and selling price. The motion picture fund was derived from the sale of motion picture tickets, and the athletic fund and recreation fund were derived from dividends either paid by the post exchange or from funds turned over from the motion picture fund; that the funds belonged to the troops as a whole, the garrison of Fort Knox, not including the officers; that the government paid nothing to the fund and owned none of the stock of the post exchange. He testified that the Union Bank of Stithton was not a government depository, and that the financial officer who is the only one who can disburse funds for the army did not have any money on deposit there. He further testified that the controlling general who made rulings concerning federal moneys had no jurisdiction over the post exchange and did not assume to exercise such jurisdiction. He testified, however, that post exchanges are established and maintained and operated according to rules and regulations of the War Department. He filed in evidence army regulations relating to the establishment, maintenance, and operation of post exchanges. These regulations provide in part:

"The members or stockholders of an exchange, including branch exchanges and subexchanges, will be such companies, troops, batteries, aero squadrons, or other similarly organized units and detachments as have purchased stock in the exchange."

The primary purpose of such exchange as set forth in the rules and regulations are:

"(1) To supply troops, at the lowest possible prices, with articles of ordinary use, wear and consumption not supplied by the Government. (2) To afford to troops means of rational recreation and amusement and (3) through exchange profits to provide, when necessary, the means for improving the company messes."

These regulations also prescribe the way and manner in which the profits of the post exchange shall be disposed of and how the affairs of a post exchange shall be terminated in the event the members are transferred to another post.

Summing up, they disclose that all funds for the establishment and operation of the post exchange are

contributed by members and stockholders. They alone participate in the profits and bear any losses. While the War Department does make and enforce rules for the regulation and control of the affairs of the exchanges, there is nothing in the rules and regulations filed in evidence to indicate that the government claims or that in fact it does have any title to or interest in the profits derived from the sale of merchandise through the post exchange or through the sale of motion picture tickets. In this connection it may be pointed out that the government did not select the depository nor exact the bond to secure the deposits, nor were the bonds made in its favor. The War Department has set forth, as a part of its rules and regulations, opinions respecting army post exchanges and funds derived from their activities. On page 1 of the printed regulations it is said: "Post exchanges are government instrumentalities"—citing opinions. Counsel for appellant seizes upon this statement in the regulations as supporting the conclusion that the funds derived from the exchange as such instrumentality are to all intents and purposes funds of the government, and therefore that the deposits in question belonged to the United States; and appellant, as assignee, is entitled to preference under the quoted section of the federal statute. However, we find it is further said in the printed regulation:

"Funds of a post exchange, although not public moneys within the meaning of sections 5488, 5490 and 5492 of the Revised Statutes, are intrusted to officers of the Army in their official capacity, and their misapplication is punishable under the Articles of War. * * *

"A post exchange is a voluntary unincorporated cooperative association of Army organizations, a kind of cooperative store, in which all share in the benefits and all assume a position analogous to that of partners."

Counsel for appellant also cites and relies on Bramwell v. United Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, but that case may easily be distinguished. See Spicer v. Smith, 288 U. S. 430, 53 S. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525, affirming the judgment and the opinion of this court found in Smith v. Spicer's Guardian and Committee, 244 Ky. 68, 50 S. W. (2d) 64.

Even if a post exchange is a government instrumentality it does not necessarily follow that a deposit in the name of a custodian of its funds in an insolvent bank would belong to the United States and be entitled to preference under section 3466, supra.

In the case of United States Shipping Board Emergency Fleet Corp. v. Wood, Trustee in Bankruptcy, 258 U. S. 549, 42 S. Ct. 386, 389, 66 L. Ed. 762, it was held in effect that a debt arising out of a contract made by the Fleet Corporation, "representing the United States of America," and presented as a claim in bankruptcy by the Fleet Corporation, as an instrumentality of the government, was not entitled to preference as a claim of the United States, notwithstanding the Fleet Corporation was a federal agency and all its stock was taken by the United States. It was further held in effect that the Fleet Corporation was a separate and distinct entity, and that, regardless of the law respecting claims of the United States, it stood like other creditors and was not to be preferred over them. See, also, United States v. Wood (C. C. A.) 290 F. 109.

National banks are not regarded as purely private enterprises, but are instrumentalities of the federal government, created and fostered for public purposes, with the sole power vested in Congress to determine the extent of the powers conferred upon them, and to regulate and control their activities, Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; Easton v. Iowa, 188 U. S. 220, 23 S. Ct. 289, 47 L. Ed. 452.

The federal statutes and the rules and regulations relating to the establishment and operation of national banks and especially respecting the use and disposition of their funds and the funds intrusted to them are more inflexible and mandatory in character and effect than the rules and regulations relating to army post exchanges, yet, this does not operate to change the nature of the bank's assets from private to public funds.

Our conclusion is that the deposits in question did not belong to the United States, and since, as held in Smith v. Spicer's Guardian and Committee, supra, indebtedness to it is essential to priority, appellant's claim to preference under the statute must fail.

Judgment affirmed.