## In re Musser

*George T. Hambright* and *A. B. Hambright,* for petitioner.
*John M. Dervin,* contra.

SCHAEFFER, J., March 4, 1933.—Jacob Musser, father of Allison B. Musser, presented his petition asking that Fulton National Bank, of Lancaster, Pa., guardian, reimburse him for the support and maintenance of his son, a weak-minded person and a World War veteran. On October 24, 1931, the court appointed The Lancaster Trust Company of Lancaster, Pennsylvania, guardian of said Allison B. Musser, who was duly adjudged weak-minded. On April 3, 1932, the United States Veterans' Bureau awarded to The Lancaster Trust Company, guardian as aforesaid, disability compensation at the rate of $100 per month, dating from March 29, 1929, and said guardian received on the former date $3,609.68 as accrued compensation. Subsequently Fulton National Bank, of Lancaster, Pa., was appointed guardian of Allison B. Musser, weak-minded, to succeed The Lancaster Trust Company, and is receiving monthly compensation, of which amount $75 per month is paid by the guardian to Jacob Musser, the father, for the maintenance of his said son.

Jacob Musser in his petition asks for the allowance to him of the sum of $889.50, for the maintenance of his veteran son by him, covering the period from March 29, 1929, to June 30, 1932, at the rate of $.75 per day. The United States Veterans' Administration appears and objects to the allowance of this alleged claim on two grounds: First, that section 22 of the World War Veterans' Act exempted this estate from the claims of creditors and that Jacob Musser, the petitioner, was a creditor; and, second, that there was no agreement alleged in the petition to be existing between Jacob Musser and Allison B. Musser, the weak-minded person, and that any service rendered by the father to the son was given on the consideration of natural love and affection.

Depositions show that the veteran was totally disabled from the time he returned home from his service in the World War. The father is now 74 years of age, has no property, and apparently has maintained and taken care of his son, Allison B. Musser, the veteran, during the period in question and prior thereto from money either advanced or loaned to him by his other children. The father testified that he desires the money, now asked for, to repay these loans.

Section 22 of the World War Veterans' Act of June 7, 1924, 43 Stat. 613, 38 U. S. C. § 454, provides as follows:

"The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the

person on whose account the compensation, insurance, or maintenance and support allowance is payable."

In Manning, Guardian, v. Spry, Treasurer, et al., 121 Iowa 191, 198, 96 N. W. 873, 875, the court said:

"In reviewing these and kindred sections of the acts of Congress, the United States Supreme Court, in *U. S. v. Hall*, 98 U. S. 343 (25 L. Ed. 180), held that a guardian appointed under state authority, to whom pension money was paid, is nothing more than an agent for the government, and that money in his hands is still under its control and management."

In United States v. Moyers et al., 15 Fed. 411, 417, the court said:

"Then it is not a right; it is a bounty; and if the government chooses to say that the money shall go absolutely to the pensioner, irrespective of the claims of any creditor or any one else, it has a right to say so; . . ."

In Wanzel's Estate, 295 Pa. 419, the Supreme Court held that war risk insurance is not subject to inheritance tax under section 22, of the Act of Congress above referred to. The claim of a creditor was not involved in that case. Chief Justice Moschzisker in his opinion said:

"However, the proceeds of war risk insurance are a definite kind of property, differing from the ordinary property of a soldier's estate, and are in the nature of a beneficence or gratuity, bounty or pension, . . . a part of [the federal government's] war policy. . . . This distinct class of property, by federal enactment, is not subject to the claim of creditors or taxation, . . ."

The case of In Re: Christian S. Bones, a Person of Incompetent Mind, 34 Dauphin County Rep. 385, is very similar to the instant case. The opinion was written by Judge Hargest. He said, at page 387:

"It therefore follows that the United States in providing the compensation under the World War Veterans' Act has distinctly determined that it should not be liable to the claims of creditors."

In that case, the Commonwealth of Pennsylvania presented a claim against the estate of the weak-minded person for reimbursement covering money expended for the maintenance of the said weak-minded person. The veteran had been committed to a State hospital.

The petitioner claims that the intention of the said World War Veterans' Act is to protect the estates of veterans from claims of ordinary creditors and to insure that the compensation be applied for the maintenance and care of the veteran; that the compensation was not received until about 3 years after March 29, 1929, the time from which it was allowed; and that during the period when compensation accrued, and before final payment, the father of claimant cared for the veteran and accordingly should be reimbursed.

The father admits no contract was entered into between him and his veteran son. It is stated on his behalf that the weak-minded condition of his son precluded such a contract.

The claim of the father in this case is that of a creditor. The World War Veterans' Act of Congress, supra, expressly and unequivocally states that the compensation and maintenance allowance shall not be subject to the claims of creditors of any person to whom such an award is made. It was also so decided in In Re: Bones, supra. In the case last cited, the claim was allowed from the date of the appointment of the guardian.

In the instant case, the court cannot allow payment for support, at least prior to the appointment of The Lancaster Trust Company as guardian of the weak-minded veteran on October 24, 1931. However, it is the duty of the guardian to maintain its ward, and the court will allow compensation to be paid by the Fulton National Bank of Lancaster, Pennsylvania, guardian as aforesaid, to

528

Jacob Musser, the father, from October 24, 1931, to April 3, 1932, at $.75 per day, or a total of $120.75. The balance is disallowed.

It is therefore ordered, adjudged, and decreed that Fulton National Bank, of Lancaster, Pa., guardian of the estate of Allison B. Musser, a weak-minded person, pay to Jacob Musser, his father, for his maintenance as aforesaid the sum of $120.75, covering the period from October 24, 1931, to April 3, 1932.

From George Ross Eshleman, Lancaster, Pa.