## RAMISH v FULTON

Ohio Appeals, 6th Dist, Lucas Co

No. 2621. Decided Jan 11, 1932

Milo J. Warner and Doyle & Lewis, Toledo, for plaintiff in error.

Gilbert Bettman, A. G., Columbus, Brown & Sanger, Toledo, Sholto M. Douglas, Toledo, for defendant in error.

A. M. Barlow, Amicus Curiae.

LLOYD, J.

By §618, Part 5, Chapter 11, Title 38, U. S. Code, it is provided that:

"No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named under Part V of this chapter, no adjusted service certificate, and no proceeds of any loan made on such certificate shall be subject to attachment, levy or seizure under any legal or equitable process, or to national or state taxation, and no deductions on account of any indebtedness of the veteran to the United States shall be made from the adjusted service creditor or from any amounts due under this chapter."

The sole question then for determination is: Was the taking possession of the property and assets of the bank by the Superintendent of Banks a seizure under any legal or equitable process of the proceeds of the loan to Ramisch on his adjusted service certificate?

It is settled law in Ohio that in the absence of some agreement to the contrary, money received by a bank on general deposit becomes the property of the bank, and its relation to the depositor is that of debtor and not of bailee or trustee of the money. To this statement it would seem might be added also the proviso "unless by law it is otherwise provided".

The word "seizure" signifies a taking by force; "The act of taking possession by virtue of an execution or legal authority. As respects the fact of seizure, it matters not by what legal officer * * * whether done by one or by the other, the act of each, the seizure itself, the forcible taking possession, is precisely the same in both cases." **The Saratoga, 9 Fed. 322, 326.**

Sec 718-89 GC, provides that "the superintendent of Banks may forthwith take possession of the business and property of any bank to which this act is applicable whenever it shall appear" that any one of nine enumerated conditions exists. Subsequent sections of the General Code provide as to how he shall proceed and what do after taking such possession. There can be no question but that on August 17, 1931, the Superintendent of Banks seized, took forcible possession of, the property and assets then in the possession and custody of the bank pursuant to legal authority, and among the property and assets so seized was $785.00, the proceeds of the loan made to Ramisch on his adjusted service certificate. Nothing has been added to or taken from the proceeds of this loan credited to Ramisch in his account with the bank.

"Proceeds" has been defined as being "the amount proceeding or accruing from some possession or transaction", and it is clear to us that this term was used in the section of the **U. S. Code** above quoted in this usual and generally accepted sense. When control of a bank for liquidation purposes is taken by the Superintendent of Banks, the question of preference creates in reality a controversy between the depositor claiming a preference and the other depositors who are general creditors, in as much as the assets in which all are to participate are diminished to the extent of whatever prefences are allowed. The creation of preferences generally speaking, should therefore be discouraged except in cases where the right thereto is clearly established. As said in **Cavin vs. Gleason, 105 N. Y., 256, at page 262.**

"The equitable doctrine that as between creditors equality is equity admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some specific recognized equity founded on some agreement or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment."

In the instant case the bank must be held to have known that the check deposited by Ramisch represented the proceeds of a loan made to him by the government, and that when collected the amount thereof was in fact the proceeds of the loan. The bank and every one connected or dealing therewith was also bound to know the law and to know that the proceeds of any such loan was exempt from seizure under legal or equitable process.

The amount of these proceeds remained intact, no part thereof having been appropriated by Ramisch to any other purpose nor converted by him into any other form of property. The commercial account was opened by him for the sole purpose of depositing therein this government check, and no interest was payable thereon. In no sense was it an investment, nor a transaction from which any profit would accrue. The assets of the bank were augmented to the extent of the $785.00, so deposited, and this sum being proceeds of a loan exempt from seizure under legal process, of which the bank and the other creditors were bound to know, none of the creditors can be heard to complain thereof.

The judgment of the court of common pleas is reversed and the cause remanded to that court with directions to overrule the demurrer and for further proceedings according to law.

There is another very apparent reason why the demurrer should not have been sustained. The petition of Ramisch alleges that his claim was rejected in toto by the Superintendent of Banks. Admittedly Ramisch, under any view of the matter, if the allegations of the petition are true, is a general creditor. We have assumed this allegation to have been a mere inadvertence on the part of the pleader and therefore, other than to mention it, have not regarded it as of any importance in the determination of the question presented for consideration.

RICHARDS and WILLIAMS, JJ, concur.