Oscar Nelson, Auditor of Public Accounts of Illinois, v. John B. Colegrove & Company State Bank.
Anna McManus, Legal Custodian of Ida McManus and John McManus, Appellee, John E. Jackson, Appellee, v. Robert G. Earley, Receiver of John B. Colegrove & Company State Bank, Appellant.

Gen. No. 8,616.

Opinion filed August 18, 1932.

OSCAR J. PUTTING, for appellant.

FRANK K. LEMON, U. S. Dist. Attorney, H. R. POOL, LEAL W. REESE and DAVID W. JOHNSTON, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

The John B. Colegrove & Co. State Bank of Taylorville, Illinois, became insolvent in November, 1929, and Robert G. Earley was appointed receiver thereof. On February 13, 1931, leave was granted to F. A. Barry, acting regional attorney of the United States Veterans' Bureau, and duly authorized attorney of George E. Ijams, director of the United States Veterans' Bureau, as an interested party, to file intervening petitions in the liquidation suit for the purpose of having two certain claims filed therein declared to be preferred and to take precedence over those of general creditors of the insolvent bank. The receiver resisted the intervening petitions by filing answers respectively

thereto denying that the claims were entitled to preferences. Upon a hearing the court decreed that each of said claims should be classed as preferred. An appeal from this decree is prosecuted by the receiver. By stipulation of parties, both of the claims were heard at the same time and the same evidence so far as applicable was applied to each claim and the certificate of evidence filed herein embraces both claims.

The facts set out in the intervening petition in regard to the first claim are substantially as follows: that James L. McManus is a permanently and totally disabled veteran of the World War; that at the time said veteran became thus disabled he had two minor children, Ida May and John McManus, who are still minors; that Mrs. Anna McManus, mother of said minors, was formally recognized and confirmed as their legal guardian by said veterans' bureau on or about February 2, 1929, by appropriate proceedings under the regulations of said bureau; that said custodian has received from the United States Veterans' Bureau in accordance with the terms of the World War Veterans' Act of 1924, as amended, various sums of money for the use and benefit of her said wards as compensation accruing to them as the minor children of the above named disabled veteran; that said Anna McManus, as legal custodian of said minors, deposited said funds as they accrued in the John B. Colegrove & Co. State Bank of Taylorville, Illinois; that from the last balance shown on the books of said bank it appears that said Anna McManus, as legal custodian of said minors, had on deposit in said institution, at the time of its becoming insolvent, $870, in an interest-bearing certificate, and an open checking account of $64.42, aggregating a total of $934.42 for which she has duly filed a claim with the receiver of said bank; that said funds were received by said custodian of said minors as the agent of the United States government and

never have reached the beneficiaries, the said minors, and while in custody of said custodian have never ceased to be funds of the United States government, and that they are, therefore, entitled to priority of payment according to section 3466 of the Revised Statutes of the United States, etc.

The material facts set out in the intervening petition in regard to the second claim are as follows: that Noah B. Jackson was a soldier in the United States army during the World War; that while in the service he was granted a policy of war risk insurance by the United States government in the sum of $6,000, in which he made his brother, Charles Jackson, minor, beneficiary as to one-half of said amount; said Noah B. Jackson died while serving in the United States army on May 21, 1921, and John E. Jackson was, on February 9, 1927, appointed guardian of the estate of said Charles Jackson, minor, by the county court and has never been discharged from said guardianship; that said guardian has received from the United States Veterans' Bureau in accordance with the terms of the World War Veterans' Act of 1924, as amended, various sums of money for the use and benefit of his said ward, as insurance accruing to him as beneficiary under said insurance policy of Noah B. Jackson, deceased; that said guardian deposited said funds, as they accrued, in the John B. Colegrove & Co. State Bank of Taylorville, Illinois and had on deposit in said institution at the time of its becoming insolvent $1,060.90 in an interest-bearing certificate, on which $13.08 interest had accrued, and also an open checking account of $65.15, aggregating a total of $1,139.13 for which he has duly filed a claim with the receiver of said bank; that said funds were received by the said John E. Jackson in his dual capacity of guardian under the laws of the State of Illinois, and as the agent of the United States government under federal legislation,

and that said funds never have reached the beneficiary, the said minor, and while in custody of said guardian have never ceased to be funds of the United States government and that said funds are therefore entitled to priority of payment within the purview of section 3466 of the Revised Statutes of the United States.

Two material legal questions are presented by this appeal and they apply equally to each claim and are controlled as to each claim by the same principles of law: (1) Are said claims in fact preferred and entitled to preferences over the claims of the general creditors of the bank? (2) Is the defense that the bank had no notice of the character of the respective deposits sustained by the evidence and the law?

In June, 1924, there was enacted by the congress of the United States what is known as the "World War Veterans' Act, 1924," and all references hereinafter made to this act are to the same as codified in the United States Code Annotated, 1928. The general purpose of the act is declared by sec. 422, part 1, ch. 10, title 38, which is as follows: "This chapter is intended to provide a system for the relief of persons who were disabled, and for the dependents of those who died as a result of disability suffered in the military service of the United States between April 6, 1917, and July 2, 1921." Sec. 425 provides for the establishment of an independent bureau under the president to be known as the United States Veterans' Bureau, the director of which shall be appointed by the president. This section further provides as follows: "There shall be included on the technical and administrative staff of the director such staff officers, experts, inspectors, and assistants as the director shall prescribe; and there shall be in the United States Veterans' Bureau such sections and subdivisions thereof as the director shall prescribe." Under sec. 426, the director, subject to the general direction of the president, shall administer,

execute, and enforce the provisions of the law, and for that purpose shall have full power and authority to make rules and regulations, not inconsistent with the provisions thereof, which are necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act, and all decisions of questions of fact affecting any claimant to the benefits of Parts II, III or IV shall be conclusive except as otherwise provided therein. All officers and employees of the bureau shall perform such duties as may be assigned them by the director and all official acts performed by such officers or employees specially designated therefor by the director shall have the same force and effect as though performed by the director in person. All regulations directed or authorized to be made, unless the context otherwise requires, shall be made by the director and he shall adopt reasonable and proper rules to govern the procedure of the divisions. Under the above noted provisions of the act the entire administration thereof is delegated to the director of the veterans' bureau and all rules and regulations promulgated by him have the same force as law. *Tomlinson v. United States,* 18 F. (2d) 795; *Sawyer v. United States,* 10 F. (2d) 416.

Sec. 430 provides that the director shall establish a central office in the District of Columbia, and such regional offices and suboffices, not exceeding 100 in number, within the territory of the United States and its outlying possessions as may be deemed necessary by him and such regional offices and suboffices may, subject to final action of the director in case of an appeal, and under such rules and regulations as may be prescribed by the director, exercise such powers for hearing complaints, etc., and all other matters delegated to them, or some of them, by the director, as could be performed lawfully by the central office. It is apparent

that the war veterans' bureau as provided for by the act is an agency of the government established for the purpose of carrying out the provisions of the act and all acts done by it are those of the federal government and all moneys paid out by it for pensions, insurance or otherwise as provided by the act are moneys of the federal government.

It is further provided in the act: "Sec. 450. Payments to minors, mental incompetents, or persons under legal disability. Where any payment under this chapter is to be made to a minor, other than a person in the military or naval forces of the United States, or to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State or residence of claimant, or is otherwise legally vested with responsibility or care of the claimant or his estate: Provided, That prior to receipt of notice by the bureau that any such person is under such other legal disability adjudged by some court of competent jurisdiction, payment may be made to such person direct: Provided, further, That for the purpose of payments of benefits under Part II of this chapter, where no guardian, curator, or conservator of the person under a legal disability has been appointed under the laws of the State or residence of the claimant, the director shall determine the person who is otherwise legally vested with responsibility or care of the claimant or his estate; And provided further, That the director, in his discretion, may suspend such payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary."

It will be noted that under the above section payment "may" be made to the person who is constituted guardian, etc., by the laws of the State or residence of the claimant, under certain conditions named in the proviso. It will also be noted that the director in his discretion may suspend such payments to any guardian, conservator or other person who shall neglect or refuse to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary. The director is not required to make such payments to the lawfully appointed guardian, curator, or conservator but may do so at his discretion and if he does so and such guardian, curator, or conservator, "or other person" shall neglect or refuse to render an account to the director as provided he may suspend such payments. In other words, the veterans' bureau through the director has complete control over all payments of the moneys of the United States within the purview of the act. That such moneys are at all times considered as moneys of the United States until actually expended for the benefit of those entitled thereto is further emphasized by the proviso in sec. 451 which is as follows: "That in cases where the estate of the decedent would escheat under the laws of the place of his residence, such instalments shall not be paid to the estate of the decedent but shall escheat to the United States and shall be credited to the appropriation from which the original award was made."

Payment of moneys to a guardian or conservator under this act is not made to the guardian or conservator in his representative capacity as such but as a representative of the federal government to whom he is required to account for his acts. The fundamental reasons for this rule are stated in the case of the *United States v. Hall,* 98 U. S. 343: "For the defend-

ant, it is insisted that when the payment is made to the guardian, the money paid ceases to be within the constitutional control of the United States, and that the Act of Congress, which enacts that the guardian who embezzles the money or fraudulently converts the same to his own use is guilty of a misdemeanor, is unconstitutional and void. But the court is unhesitatingly of a different opinion, for several reasons: (1) Because the United States, as the donors of the pensions, may, through the legislative department of the government, annex such conditions to the donation as they see fit, to insure its transmission unimpaired to the beneficiary. (2) Because the guardian, no more than the agent or attorney of the pensioner, is obliged by the laws of Congress to receive the fund; but if he does, he must accept it subject to the annexed conditions. (3) Because the word 'guardian' as used in the Acts of Congress, is merely the designation of the person to whom the money granted may be paid for the use and benefit of the pensioners. (4) Because the fund proceeds from the United States, and inasmuch as the donation is a voluntary gift, the Congress may pass laws for its protection, certainly until it passes into the hands of the beneficiary, which is all that is necessary to decide in this case. . . . Power to protect the fund from misappropriation, fraud and unauthorized conversion to the use of another, and to secure its safe and unimpaired transmission to the beneficiary, has been claimed and exercised through the whole period since Congress, under the Constitution, commenced to grant such bounties.'' The Supreme Court of Iowa in *Manning v. Spry,* 121 Iowa 191, very tersely expresses this principle as follows: ''Indeed, as we understand it, the government may, and frequently does, withhold pensions from one under guardianship. If a guardian does receive it, he is amenable to the de-

partment for its care and disposition. This being true, it has not reached the beneficiary until actually paid to him or expended for his benefit. While in the guardian's hands, he is a mere trustee or depositary for the general government."

Sec. 454 is as follows: "The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable." At the time the bank closed its doors on account of its insolvency the moneys deposited therein by the respective claimants had not been expended for the benefit of the beneficiaries. They were still moneys of the United States. They were not assignable nor were they subject to the claims of any of the creditors of the beneficiaries and were exempt from all taxation, nor could any of these funds be appropriated by the receiver of the bank for the payment of any indebtedness of the bank to its creditors. It was held in the case of *State of Nebraska v. First State Bank of Pawnee City,* 121 Neb. 515, 237 N. W. 623, that where war risk insurance is paid by the United States to the guardian of an incompetent, the money belongs to the United States, and is subject to its control until it reaches the beneficiary designated according to law. In such a case the guardian is the agent for the government and his authority over the fund is limited and controlled by federal statutes alone. In the above case the court also held: "The United States, for conven-

ience, paid the money impressed with a trust provision to the guardian. Such guardian could not be required to accept the money, but, if he accepted it, he took it subject to all the provisions imposed by statute.'' In the case of *Tama County v. Kepler,* 187 Iowa 34, it is said: ''It is the settled law of the United States and of this State that the guardian in such case 'is nothing more than an agent for the government, and that pension money in his hands is still under its control and management.' '' The rule is stated in 21 R. C. L. 247, sec. 13: ''Throughout the whole period since the constitution was adopted it has been the policy of Congress to enact such regulations as will secure to the beneficiaries of the pensions granted the exclusive use and benefit of the money appropriated and paid for that purpose. With that view, sales, pledges, mortgages, assignments and every other kind of conveyance have been prohibited. . . . This power of Congress to enact such protective measures cannot well be questioned, for if it may grant pensions it is difficult to see why it may not pass laws to protect the fund appropriated for such a beneficiary of the government, certainly until it reaches his hands. And power to protect the fund from misappropriation, fraud and unauthorized conversion to the use of another, and to secure its safe and unimpaired transmission to the beneficiary, has been claimed and exercised through the whole period since Congress, under the constitution, commenced to grant pensions.'' To the same effect are *State v. Security Bank of Creighton,* 121 Neb. 521, 237 N. W. 620; *In re Fisher's Estate,* 302 Pa. 516, 153 Atl. 736; *Butler v. Cantley* (Mo. App.), 47 S. W. (2d) 258.

In 1924, congress also passed an act entitled ''World War Veterans' Adjusted Compensation Act'' which provides for the making of loans on adjusted service certificates of veterans. By this act an application for

such certificate is filed with the secretary of war or with the secretary of navy, as the case may be, and is transmitted by him to the United States Veterans' Bureau which is granted authority to carry out the provisions of the act. Sec. 618 thereof provides: ''No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named under Part V of this chapter, no adjusted service certificate, and no proceeds of any loan made on such certificate, shall be subject to attachment, levy, or seizure under any legal or equitable process, or to National or State taxation.'' In construing the effect of this section of that act the Court of Appeals of Ohio in the case of *Ramisch v. Fulton* (Ohio App.), 180 N. E. 735, held that the taking possession of the proceeds of the loan advanced to Ramisch on his adjusted service certificate by the receiver of an insolvent bank in which such proceeds had been deposited was a seizure under a legal or equitable process and void, and that Ramisch was entitled to preferential payment. In the course of this opinion the court said: ''The creation of preferences, generally speaking, should therefore be discouraged except in cases where the right thereto is clearly established,'' and held in effect that the right to a preference in that particular case had been established. In the case at bar the moneys in question when the bank ceased to do business were the moneys of the United States, and the director of the United States Veterans' Bureau, as the agent of the government, had the right and it was his duty to retake said moneys and apply them for the purposes for which they were appropriated.

It is claimed by appellant that the bank had no notice of the character of the funds deposited by the claimants. The evidence fully discloses that they had such notice. The payments were made to the claimants re-

spectively by checks issued by the treasurer of the United States. These checks were deposited by the respective claimants in the bank for which credit was given by the bank and show upon their face for what purpose they were drawn. The form of these checks, as an illustration, is as follows:

    R-1
United States                    Denver, Colo.    216,354
    Veterans             1
      Bureau    Treasurer of the United States
                                        15-51
                                      July 31, 1929
(Thesaur.)    Pay in Dollars Fourteen 25-100*** $14.25
(Amer.    )
(Septant. )   To the Order of Mrs. Anna McManus
(Sigil.    )                            LGL CUSt
                      DC-1201429
Object for which    Ida May McManus    (No-Pro)
                                        (70-376)
      drawn           302 E. Franklin St.
    Compensation            Taylorville, Ill.
                        C. E. Evans
                      _____

                      Special Disbursing Agent
          By              C. E. Evans
                      _____

                          11-463

On the back of which appears the following:
R-1
Form Approved by Comptroller of the Treasury, January 27, 1931.

This check must be indorsed in ink or indelible pencil on the line below by the person in whose favor it is drawn, and the name must be spelled exactly the same as it is on the face of the check.

If endorsement is made by mark (X) it must be witnessed by two persons who can write, giving their place of residence in full.

Mrs. Anna McManus

(Sign on this line)
Cust of Ida May McManus
Pay To The Order Of
ANY BANK OR TRUST Co.
All Previous Endorsements Guaranteed
AUG 5 1929
JOHN B. COLEGROVE & Co.
****STATE BANK****
Taylorville, Illinois
RECEIVED PAYMENT FROM
The Treasurer of the United States
AUG - 6 1929
FEDERAL RESERVE BANK
2-30    of Chicago    2-30

The form of receipt issued by the Bank is as follows:
Capital $200,000.00
Surplus $ 50,000.00

John B. Colegrove & Co. State Bank    No. 15830
J B C & Co.    Taylorville, Ill. Mar 11 1929    $870.00
This Certifies That Anna McManus Cust of Ida & John McManus Has Deposited In This Bank The Sum of $870 and 00 cts Dollars Payable To The Order of Same x - - - In Current Funds  -12-  Months After Date With Interest At The Rate of -3- Per Cent Per Annum. No Interest After Maturity.

Not Subject to Check.
Leon Traylor

A Cashier

These checks and receipts show conclusively that the bank had full knowledge of the character of the de-

posits. In the case of *Ramisch v. Fulton, supra,* the court also held: "In the instant case the bank must be held to have known that the check deposited by Ramisch represented the proceeds of a loan made to him by the government, and that when collected the amount thereof was in fact the proceeds of the loan. The bank and every one connected or dealing therewith was also bound to know the law and to know that the proceeds of any such loan were exempt from seizure under legal or equitable process." In the case of *Clarke v. Public National Bank & Trust Co.,* 259 N. Y. 285, 181 N. E. 574, the court, in commenting upon similar checks, said: "We may assume that the checks on their face gave notice to the bank that they were received by Louis Rosenhaus in a fiduciary capacity for an incompetent veteran." So in this case the checks and the receipts given for the various deposits made by the claimants in their respective capacities charged the bank with the notice of the character of such deposits and the law in regard thereto.

The priority of the claims in question involved on this appeal has been clearly shown and the respective decrees of the circuit court are affirmed.

*Affirmed.*