**AREND et v FULTON et**

Ohio Appeals, 6th Dist, Erie Co

Decided May 4, 1936

R. A. Ramsey, Sandusky, Ashley W. Van-Duzer, Cleveland, and Clan Crawford, Cleveland, for plaintiffs.

John W. Bricker, Attorney General, Columbus, Daniel E. Morgan, Cleveland, Earl C. Krueger, Sandusky, and George E. Reiter, Sandusky, for defendants.

## OPINION

By LLOYD, J.

On July 22, 1933, the Superintendent of Banks assumed charge of the property and assets of The Commercial Banking & Trust Company, Sandusky, Ohio, for purposes of liquidation. The bank was incorporated in 1922 as a commercial bank, savings bank and trust company "exercising all powers which may be exercised by a corporation engaged in such business, and the doing of the things necessary or incident thereto." Pursuant to a resolution of its board of directors, the bank, in April, 1927, executed a declaration of trust, conforming to which participation certificates, executed by "The Commercial Banking & Trust Company, Trustee," by its trust officer, were issued to the bank entitling it to participation to the amount of the several certificates in certain first mortgage investments of the bank held by the bank as trustee, in an account designated in its trust department as Sundry Trust No. 60.

In part, it was provided that the bank as trustee should "at all times have and retain title to and possession, management and control of said first mortgage investments, and of all arrangements and details in connection therewith"; that the certificates should draw interest at 6% per annum, payable at stated times out of the interest received upon the principal of the trust, pro rata with other participation certificates, and unless renewed as therein stipulated should expire in one year, at which time the record holder thereof should be entitled to receive the amount represented thereby out of the principal and interest collected by the trustee from such investments, against which the certificate was issued, all interest and principal to be payable at the office of the bank; that as the trust department sold certificates to others and reported same to the bank it would endorse upon the back of the certificate held by the bank all such sales, thereby each time reducing its proportionate share of its interest in the certificate when the amount of the sale was made.

Certificates such as the above were issued to the bank each time that mortgages were sold by the bank to the bank as trustee. Printed certificates of participation, sub-

stantially the same in form and executed by the bank as trustee, but drawing a less rate of interest, were thereafter delivered to purchasers of interests in the trust so sought to be created, the declaration of trust providing that:

"The first mortgage notes and first mortgage real estate bonds so deposited as aforesaid are to remain under the control, management and possession of said Bank and may be withdrawn from said Trust Department from time to time by the substitution therefor of other mortgage notes or mortgage bonds of like face value."

That part of this specific condition providing for the substitution "of other mortgage notes or mortgage bonds" did not appear in the resolution of the directors providing for and authorizing the creation of the attempted trust, nor in any of the participation certificates. A large number of participation certificates were sold to various persons who were holders thereof at the time the Superintendent of Banks took possession of the property and assets of the bank for purposes of liquidation.

On October 3, 1933, the plaintiff, Edna Arend, petitioned the Court of Common Pleas to remove the bank and the Superintendent of Banks "as trustee of said mortgages for the benefit of plaintiff and other certificate holders, and that the court appoint successors in trust," and that the mortgages and the notes held in trust be turned over to the successor trustees.

The Superintendent of Banks answered, denying the validity of the trust and asked to be instructed by the court as to the course to be pursued with respect thereto. The Court of Common Pleas, on the authority of Ulmer v Fulton, Supt. of Banks, 129 Oh St, 323, 195 NE, 557, held that the trust was invalid, and from that decree the plaintiff appeals to this court.

In the case just cited, Ulmer, as a certificate holder, sought in effect to have certain established participation trusts held invalid, the Superintendent of Banks seeking to surrender the trusts and asking for the appointment of a successor trustee, whereas in the instant case a certificate holder is asking that similar trusts be declared valid, the Superintendent of Banks denying their validity, and it is here claimed that these factual differences destroy "any claimed analogy between the Ulmer case and the case at bar." We are unable to so differentiate. The bank here, as in the Ulmer case, by written instruments of

definite terms sought to create trusts out of its own property, which ██ the Supreme Court positively declared it had no power or authority to do. And if such a trust be invalid as against public policy, it is difficult to conceive why its validity or invalidity should be determined and controlled by the desire of a certificate holder, or by the changing position of the Superintendent of Banks, who represents not himself as an individual, nor the state as such, but acts as a liquidating agent to possess and preserve the property and assets of the bank for the benefit of its depositors. Another difference alleged is that in the Ulmer case the certificates were signed by the bank as a bank, and not as trustee. Such difference, it would seem, does not in fact exist, since the certificates of participation considered in that case recited that "The Commercial Savings Bank & Trust Company, Toledo, Ohio, hereinafter called Trustee." In any event, the bank is one institution, ██ and the addition of the word "Trustee" can not make it any more or less than a single corporate entity seeking to make itself trustee of its own property.

It is argued also that if Trust No. 60 is not valid as an express trust, it is valid as as a constructive or resulting trust. This can not be, for the reason, as ██ stated in the opinion of the court in the Ulmer case, supra, at page 339: "if any trusts were established they were express trusts, because formed through written instruments of definite terms."

If the attempted trust could be effective only as an express trust, then there could not exist, under any circumstances, a trust relation deduced from an implied intent arising from the nature of the transaction itself; nor could there be a constructive trust, because the purchasers of the certificates did not intrust the bank with money or property for invest- ██ ment which the bank wrongfully converted or diverted to some other than the intended purpose whereby they were defrauded to the profit of the bank, but purchased and received exactly what they intended to purchase and receive, the status of which as purchasers they were bound to know. If the bank were engaged in business as a solvent institution, the contention of plaintiffs would commend consideration, but being insolvent and in process of liquidation the

participation certificate holders are in no better position than other general creditors.

We are not confronted with the question of what it might be considered as equitable to do, under the facts and circumstances in evidence, but are confronted with the fundamental question of the validity of the alleged trust.

The trust being invalid, plaintiff in effect seeks a preference over the claims of general depositors, which, it would seem, makes pertinent the following observation made by this court at page 446 of its opinion in **Ramisch v Fulton, Supt. of Banks, 41 Oh Ap, 443, (180 NE, 735); (11 Abs 346):**

"When control of a bank for liquidation purposes is taken by the superintendent of banks, the question of preference creates in reality a controversy between the depositor claiming a preference and the other depositors who are general creditors, inasmuch as the assets in which all are to participate are diminished to the extent of whatever preferences are allowed."

We can not distinguish the instant case from the Ulmer case in principle or in fact. A decree may therefore be entered accordingly.

Decree accordingly.

OVERMYER and CARPENTER, JJ, concur.