## HAGGERTY v SQUIRE et

Ohio Common Pleas, Cuyahoga Co

Decided Dec 31, 1937

Horwitz, Kiefer & Harmel, Cleveland, Rocker & Schwartz, Cleveland, and Halle, Harris, Haber & Berick, Cleveland, for plaintiff.

Herbert S. Duffy, Attorney General, Columbus, and Harold H. German, Special Counsel, Cleveland, for defendants.

## OPINION

By HURD, J.

Essentially this is an action to set aside an issue of land trust certificates issued by the defendant, the Union Trust Company as trustee, on the ground that said issue

was beyond the power of said defendant, void and without legal effect. The case has been submitted upon an agreed statement of facts. The statement of facts is so extensive that in the interest of brevity a consideration thereof is deemed advisable and only so much thereof is included herein as may be deemed necessary for an understanding of this opinion. The condensed statement is as follows:

1. Defendant S. H. Squire is the duly appointed, qualified and acting superintendent of banks, and as such is in charge of the liquidation of the Union Trust Company. As such superintendent said defendant Squire has a right and title to all of the assets and is liquidating the same for the benefit of the depositors, creditors and stockholders of the Union Trust Company.

2. The defendant the Union Trust Company has been, since some time prior to June 1, 1933, a corporation duly organized and existing under the laws of the state of Ohio, and since that time has actually carried on a savings and commercial bank and trust company business in, and about the city of Cleveland.

On various dates during the year 1923, divers persons conveyed to the Union Trust Company by warranty deed certain parcels of property which together comprised one parcel of land having a frontage of 258 feet cn the southeasterly side of Carnegie Avenue at a point just west of its intersection with East 12th Street in the city of Cleveland.

3. By indenture of lease dated January 1, 1924, the Union Trust Company demised said property to Thomas Cusack for a term of 99 years renewable forever.

On or about September 3, 1934, Thomas Cusack assigned said lease to the Carnegie-Twelfth Company, a corporation.

4. On or about August 1, 1926, the Union Trust Company caused to be prepared an instrument purporting to be an agreement and declaration of trust by and between the Union Trust Company as trustee and such other persons, partnerships, associations and corporations as might become parties thereto by the acceptance of certificates of equitable ownership described in said agreement and declaration of trust and issued thereunder.

Pursuant to the provisions of said declaration of trust which was recorded the Union Trust Company was named as trustee of the aforesaid property to hold the title thereto and to collect the income thereof for the benefit of the holders and owners of the land trust certificates issued thereunder. It was provided in said instrument that the equitable and beneficial interest in said property was divided into 456 indivisible equal shares which fractional shares were to be represented by the certificates of equitable ownership designated as "land trust certificates."

5. At or about the time of the preparation of said instrument designated as an agreement and declaration of trust the Union Trust Company caused to be prepared pursuant to said trust agreement certain certificates entitled "Land Trust Certificates of Equitable Ownership in Carnegie-Twelfth property located in Cleveland, Ohio, sub-leased to the General Outdoor Advertising Company."

6. The trust was set up and administered in the corporate trust department of the Union Trust Company and the officers and employees of said department prepared and kept all books and records used in the establishment and the administration of the trust. There is no evidence in the minutes of any of the committees or the board of directors of the Union Trust Company authorizing the Union Trust Company to become trustee of said estate.

7. The land trust certificates under said declaration and agreement of trust were issued by the Union Trust Company as trustee, and such issuance, together with all cancellations and transfers were handled by the stock transfer department of the Union Trust Company.

8. The property above described and conveyed to the Union Trust Company in 1923 was held by the Union Trust Company from the time of conveyance thereof as security for loans made by the Union Trust Company to the Ontario Street Land Company, an Ohio corporation.

9. The Union Trust Company and the Ontario Street Land Company on various dates during the years 1924 and 1925 and 1926 entered into agreements known as "holding title agreements" by the terms of which the Union Trust Company held the title to said property for the purpose of securing loans made to said Ontario Street Land Company.

10. The Ontario Street Land Company authorized the Union Trust Company to execute the trust dated August 1, 1926, and to issue the land trust certificates thereunder and at the same time agreed with the Union Trust Company that the Union Trust Company pay itself out of the proceeds of the sale of said land trust certificates the sum of $150,000 to be ap-

plied upon a $240,000 loan of the Union Trust Company to the Ontario Street Land Company in consideration of the Union Trust Comany releasing its interest in said property which with other property was held as security for said loan.

11. By special warranty deed dated August 1, 1926, the Union Trust Company "as trustee under an agreement and declaration of trust dated February 1, 1926," conveyed the property described in the petition to itself as trustee under an "agreement and declaration of trust dated August 1, 1926."

12. On or about August 20, 1926, the Ontario Street Land Company executed to the Union Trust Company "as trustee under an agreement and declaration of trust dated August 1, 1926," a quit claim deed to said property. Said deed was not recorded and on the cover thereof appeared the pencil notation "not to be recorded."

13. The land trust certificates prepared pursuant to the aforesaid agreement and declaration of trust dated August 1, 1926, remained in the possession of the Union Trust Company and were unissued until October 13, 1926. An undated memorandum of a vice-president of the Union Trust Company in charge of the corporate trust department of said bank contained the following:

"The title to this property is held under Holding Title Agreement with the Ontario Land Company, first to secure loans made by us. No land trust certificates shall be issued without provision for the payment of our loan."

14. Shortly prior to October 15, 1926, a vice-president of the Union Trust Company in charge of the corporate trust department issued certain instructions including the following to the then assistant secretary of the Union Trust Company and an officer in such corporate trust department.

"Collect from Collins Company $216,000 and accrued rental on $228,000 at 5¾% from August 1, 1926, to date of payment. Deliver one certificate for whole 456 shares to Ontario Street Land Company and it will assign to the Collins Company who will have re-issued, putting up with loan."

15. On or about August 21, 1926, a vice-president of the Union Trust Company issued the following instructions to a person of the stock transfer department at said bank:

"The trust agreement dated February 1, 1926, under which the Carnegie-Twelfth Land Trust Certificates were to be issued has been terminated and all of the old certificates except cancelled specimens should be destroyed. We are to receive from the Judson Printing Company Monday morning certificates under a new land trust on the same property under an agreement dated as of August 1, 1926. We want to be prepared to issue a few of these certificates Monday morning."

16. On or about August 23, 1926, an assistant secretary delivered to the stock transfer department land trust certificates pursuant to said agreement and declaration of trust dated August 1, 1926, numbers 1 to 995 inclusive.

17. Pursuant to the aforesaid instructions of the vice-president, to the assistant secretary prior to October 13, 1926, the assistant secretary established an escrow in the corporate trust department of the Union Trust Company and prepared a draft of ledger sheet to show the receipts and disbursements of the proceeds of the sale of said trust certificates.

18. On October 13, 1926, the Union Trust Company received in said escrow from the Phillip H. Collins Company, a corporation then engaged in business in Cleveland, Ohio, as a broker of investment securities for said issue of certificates, the sum of $216,000 as principal and $2,574.88 as rental from August 1, 1926. On the same date the Union Trust Company paid to its collateral loan department out of such proceeds the sum of $150,000 to be applied on the lease of the Ontario Street Land Company for release of the Cusack parcel which parcel is the same as described in plaintiff's petition. At the same time it paid itself out of such proceeds the sum of $378.00 as its initial fee upon the trust established under the agreement and declaration of trust dated August 1, 1926.

On the same date, to-wit, October 13, 1926, the Union Trust Company as trustee issued said land trust certificates.

18. Prior to October 13, 1926, the Phillip H. Collins Company sold said land trust certificates at the rate of $505 per share and accrued rental at the rate of 5¾% from August 1, 1926, to the date of purchase. In selling such certificates the Phillip H. Collins Company issued and circulated a prospectus, a copy of which is an exhibit in this case.

19. On February 17, 1927, the Carnegie-Twelfth Company assigned its interest as

lessee under the aforesaid lease dated January 1, 1924, to the General Outdoor Advertising Comany for the term beginning February 1, 1927. Such assignment being recorded on March 17, 1927.

20. On May 15, 1926, the General Outdoor Advertising Company assigned its interest as said lessee in said lease to the Central Outdoor Advertising Company, Inc., such assignment being recorded.

21. On February 29, 1932, the Central Outdoor Advertising Company assigned its interest as lessee under said lease to Real Estate Equities, Inc.

22. On April 1, 1932, the quarterly rental of $3,500.00 then due under said lease was not paid and thereafter no rent accruing on said lease was ever paid. On August 18, 1932, Real Estate Equities, Inc., executed and delivered to the Union Trust Company, trustee, a deed of release and quit-claim recorded in the record of deeds of Cuyahoga County.

23. From August 1, 1926, until April 1, 1932, the Union Trust Company as "trustee under said agreement and declaration of trust dated August 1, 1926," collected quarterly and rental income from the lessee of said property and distributed such income to the holders of the land trust certificates in proportion to their holdings. The last distribution of such quarterly rental income having been made on February 1, 1932, for the period February 1, 1922, to May 1, 1932. The land trust certificates are in default of any payment by way of dividend or interest since May 1, 1932.

24. On or about February 2, 1932, Ira J. Fulton, the then acting superintendent of banks in charge of liquidation of the Union Trust Company, tendered the resignation of the Union Trust Company as trustee under said agreement and declaration of trust dated August 1, 1926, and appointed the Cleveland Trust Company as "Successor Trustee" under said agreement and declaration of trust, and on or about May 15, 1934, executed and delivered to the Union Trust Company a deed of conveyance of the property described in the petition which is recorded in the records of deeds of Cuyahoga County.

25. On March 21, 1936, the plaintiff herein filed with the defendant S. H. Squire, superintendent of banks of the state of Ohio in charge of the liquidation of the Union Trust Company an affidavit of claim. Said claim was rejected by said S. H. Squire as superintendent on March 31, 1936.

26. The plaintiff, Harry W. Haggerty, is the holder and owner of certificates evidencing the ownership of twenty and ten of said 456 shares respectively and for said certificates paid a total sum of $15,150 plus accrued rental of the total of 456 shares issued by the Union Trust Company as trustee on August 13, 1926. There are now 449 issued and outstanding shares.

## CONCLUSIONS OF LAW

Do the facts as set forth herein bring this case within the principle of law which forbids self interest or self dealing by a trustee?

An examination of the facts will disclose two aspects which invite attention, one of which is presented by the form, the other by the substance of the transaction under consideration. On the basis of form alone it appears that the bank while holding the legal title to the real estate in question attempted to create a trust with said property as the trust res, and at one and the same time sought to act as settlor and trustee. Out of the trust so established it then proceeded to sell an issue of participating land trust certificates to the general public through the agency of a dealer in securities.

In our opinion such action is clearly repugnant to the rule in the case of **Ulmer v Superintendent of Banks, 129 Oh St 323,** decided April 24, 1935.

Said case is authority for the proposition that the statutes of Ohio do not authorize a banking and trust company to act in the dual capacity of settlor and trustee by creating trusts out of its own property and thereupon to sell participation land trust certificates therein to the public.

It is indeed true that in the case of Ulmer v Fulton, supra, the trust res was in the form of securities the property of the bank whereas in the instant case it is real estate and the beneficial interest therein also the property of the bank so far as the legal title is concerned which constitutes the trust res. In respect of this proposition we find ourselves in accord with the opinion expressed by the trial court in the case of **Gallagher v Squire,** Court of Appeals of Erie County, Case No. 469, (25 Abs 620). Motion to certify overruled, where it was said:

"It is difficult to say where there exists any difference between 'securities' and 'real estate,' and the 'buildings thereon'."

According to our view whether it is real or personal property the result is the same in principle,

But while the form in which this transaction was completed is perhaps of some importance it is with the substance that we are primarily and principally concerned. "Equity regards the substance rather than the form" is a maxim of equity which would seem to have peculiar application to the facts of this case. Examining the evidence, including the exhibits admitted in evidence by the stipulations of fact hereinbefore set forth, it appears that the bank at various times advanced funds for the purchase of the property covered by the land trust certificates at the instance of a corporation known as the Ontario Street Land Company. Instead of following the procedure usually employed in such cases of securing the purchase money so loaned by mortgage, the bank acquired the legal title to the premises by warranty deed from the respective grantors. The interest of the Ontario Street Land Company was then evidenced by a series of "holding title agreements" by the terms of which the bank acknowledged that it held title to the property therein described "for the purpose of securing to said second party (the bank) the repayment of said loan." Those "holding title agreements" were not recorded and were probably not entitled to record in the form in which they were executed.

By these devices the respective interests of the bank and the land company in the transaction were effectually withheld from public view. We find also that there was no reference to this transaction in the prospectus used in advertising the participating land trust certificates for sale to the public. We find that there was no disclosure of any kind as to the interest of the bank in the trust res. In this state of the record the bank then created the trust as hereinbefore described constituting itself as trustee and disposing of the certificates as hereinbefore described. We find further that upon the sale of the land trust certificates to the public, the bank as its first official act after setting up the mechanics of the trust paid to itself the balance due it under the holding title agreement in the sum of $150,000.00 out of funds realized from the sale in addition to the fees charged for its services in acting as trustee. The balance of the proceeds it paid to the Ontario Street Land Company. So far as the certificate purchasers or any member of the public knew or by the exercise of diligence in examination of public records could learn the bank held title to the trust res and also acted as trustee.

In our opinion a consideration of the substance of this transaction discloses two vices in the conduct of the bank as trustee. The first vice is in the fact of self-interest and self-dealing by attempting to act in the dual capacity of settlor and trustee by creating a trust out of property in which it had such a substantial interest and by selling participation certificates therein to the public. In our opinion such an undertaking is opposed to sound public policy and is invalid, coming clearly within the principle of the rule established in the case of Ulmer v Fulton, supra.

The second vice consisted in the concealment by the bank of its real interest in the transaction from the certificate purchasers who by the act of purchase became the cestui que trustent to whom it owed the duty of undivided loyalty required of one acting in a fiduciary capacity and therefore the further duty to make full disclosure of any self interest.

Disregarding all questions of form and confining ourselves exclusively to a consideration of the substance of the transaction we conclude that the principles set forth at length in Ulmer v Fulton, supra, are in point as evidenced by the following quotations:

"Transactions partaking of somewhat analogous characteristics have been condemned, disapproved and nullified by this court on a number of different occasions." (Citing authorities). * * *

"It is a salutary rule of long recognition that a trustee cannot sell his individual property to himself as trustee." * * *

"The sale by a trustee of his own property is void as against public policy." (Citing and quoting with approval In Re: Long Island Loan & Trust Co., 92 Appeals Division 1-87 N. Y. S. 65).

"The rule is imperative that a trustee cannot buy his own property for the purpose of the trust. It makes no difference that the sale is intrinsically a fair one and for full consideration. 'The policy of equity is to remove every possible temptation from the trustee.' Citing and quoting with approval—Cornet v Cornet, 269 Mo. 298-328; 190 SW 333. * * *

"Statutory recognition of the policy prohibiting trustees from buying or selling to themselves is to be found in the recently enunciated §10505-49 GC, which applies to fiduciaries appointed by and accountable to the Probate Court. That section reads, 'Fiduciaries shall not buy from or sell to themselves, nor shall they in their indi-

vidual capacities, have any dealing with the estate, any power in the instrument creating the trust to the contrary notwithstanding'." * * *

"For a particular undertaking to be against public policy actual injury 'need not be shown. It is enough if the potentialities for harm are present." Citing **Porter v Trustees of Cincinnati Southern Railway,** 96 Oh St 29-33; 117 NE 20; quoting 9 Cyc. 481 (Page 336).

It is indeed singular that the entire transaction under consideration was so clothed in secrecy that no mention of the substantial interests of the trustee was made in the prospectus and that there was no disclosure of the proposed distribution of the proceeds of the sale of the land trust certificates in such a substantial sum to the trustee to protect interests previously acquired by it, in the trust res. The prospectus contained a sketch of the then proposed Lorain-Carnegie Bridge now located a short distance from the property and a description of the 99-year lease to the Cusack Comany with great emphasis laid upon the sublease to the General Outdoor Advertising Company whereby said company was obligated to pay an annual rental of $36,000 also a description of the history of the organization of the General Outdoor Advertising Company including a description of its financial standing all patently designed as alluring inducement to the purchase of the certificates.

While no claim is made in the petition filed herein with respect to the conduct of the bank in connection with the management and execution of the alleged trust, nevertheless the evidence clearly presents some facts deserving of special notice as hearing upon the peculiar conduct of the bank in relation to this trust as a whole. These facts have relation to the conduct of the bank in respect of the 99-year lease to the Cusack Co., to which reference has been made. After the sale of the certificates the bank as trustee executed its consent in writing to an assignment of the underlying lease by the Carnegie-12th Company to the General Outdoor Advertising Company.

The effect of this action was to merge the sub-lease of the General Outdoor Advertising Company calling for an annual rental of $36,000 into the underlying lease calling for an annual rental of only $14,000 thus destroying the obligation of the General Outdoor Advertising Company to pay as rental the sum of $36,000 per annum, which

feature of the lease had been held out as an inducement to the certificate purchasers, the prospectus stating that "The General Outdoor Advertising Company has expressed in writing its entire satisfaction with its Cleveland location and its intention of occupying the premises for many years to come."

Thereafter the General Outdoor Advertising Company assigned the lease to the Central Outdoor Advertising Company, an affiliate and following this assignment the Central Outdoor Advertising Company in turn assigned the lease to the Real Estate Equities, Inc., a corporation without financial responsibility, which thereupon promptly defaulted in payment of the first quarterly rental due from it, since which time no rental has ever been paid under the lease. No action was taken by the bank to set aside this assignment to the Real Estate Equities, Inc., which was obviously made for the purpose of enabling the responsible lessees to escape their obligations under the lease. Under such circumstances it would appear to have been the duty of the trustee to proceed by proper court action to set aside this transfer on the ground of fraud. Instead, however, of so doing, the bank accepted a quit-claim deed from the last assignee which terminated the lease and forever foreclosed any opportunity the beneficiaries of the trust may have had to realize upon the security of this 99-year lease, the value of which was so greatly emphasized in the sale of the Land Trust certificate. The conduct of the bank in this respect in its capacity of trustee seems to have been lacking in that zeal for the best interests of its beneficiaries, which should characterize a trustee so situated. It appears also to be indicative of the general attitude of the bank toward the interest of its beneficiaries, as exemplified in its conduct before, as well as after the creation of the trust. However dubiously we may be inclined to view the conduct of the trustee in this respect, nevertheless our decision herein reached is predicated upon the conduct of the trustee in respect of the establishment of the trust.

Upon a careful review of all the evidence we are of the opinion that the facts in this case, viewed from any aspect of form or substance, bring it within the principle of law which forbids self interest or self dealing by a trustee.

In this conclusion we have been guided by the principles enunciated in the following Ohio cases:

**Ulmer et v Fulton, Supt. of Banks,** 129

Oh St 323, 2 O.O. 326; Gallagher v Squire. Supt., etc. et, Court of Appeals of Erie County, No. 21241 (25 Abs 620); Arand et v Fulton, Supt. of Banks et, 53 Oh Ap 503, 7 O.O. 328 (23 Abs 16); Cox, Admr. v John, 32 Oh St 332; Caldwell v Caldwell, 45 Oh St 512; Riddle v Roll, 24 Oh St 572; Platt v Longworth's Devisees, 27 Oh St 159; Barring-son v Alexander, 8 Oh St 189; English v Moneypeny, 11 O.D. Rep. 394; Armstrong v Huston's Heirs, 8 Ohio 332; Quarter v Trustees of Cincinnati So. Ry Co., 96 Oh St 29; Ehrman v Union Central Life Ins. Co., 35 Oh St 324, 337.

For other than Ohio cases see cases and authorities cited and quoted by Zimmerman, Judge, at 129 Oh St 335-336, also Restatement of Trustees, §170-170H and I; 26 R.C.L. 1329, 39 Cyc. 296, 297; 65 C. J. 653, §520.

Upon authority, reason and logic we are of the opinion that the issue of land trust certificates in question should be set aside, the holders of such certificates declared to be general creditors of the liquidating bank and the title to the property in question be restored to the superintendent of banks to be administered together with the other assets of the bank for the benefit of all creditors by said superintendent in charge of liquidation.

Counsel for defendant have presented and argued as two separate defenses the proposition that (a) the plaintiff may not represent the certificate holders as a class and (b) that the plaintiff may not bring this action as a class suit. We believe that these defenses are without merit; on the authority of Ulmer v Fulton, supra. If the trust is void as to one it is void as to all and equity may properly take jurisdiction of this action by this plaintiff as representative of a class in order to avoid a multiplicity of suits by individual claimants.

The defendant the Cleveland Trust Company having been appointed successor trustee is required by this order to restore the trust res. In this connection we believe it proper to state that the defendant Cleveland Trust Company had no part in this transaction but has merely acted as successor trustee under order of the court and in that respect has abided by all of its obligations as successor trustee.

An order therefore will be entered setting aside the issue of land trust certificates holding the certificate holders to be general creditors of the liquidating estate and transferring the trust res from the Cleveland Trust Company successor trustee to the superintendent of banks in charge

of the liquidation of the Union Trust Company for administration together with the other assets of the liquidating bank. While the petition contains a prayer for receiver we believe that the appointment of a receiver is unnecessary having confidence in the superintendent of banks to carry out faithfully the orders of the court.

An order will be entered accordingly preserving exceptions to any or all parties properly entitled thereto.