During the summer and early fall of 1917, the Congress of the United States had *Page 585 
urgent occasion to consider the matter of financial protection to the members of the armed forces of the United States who should suffer disability in line of duty, and to the families of those who should lose their lives. The Congress provided for what has been known as "war risk insurance," stating in the act that the law was enacted in order to give to every member of the armed forces "greater protection for themselves and their dependents" than was provided by previous legislation. The underlying purpose of the act, then, was to protect service men and their dependents.
After the close of the war, the act was necessarily amended, the classes of permitted beneficiaries greatly enlarged, and other new elements introduced. Even to this day, however, it is recognized that the proceeds of policies of war risk insurance possess some peculiar characteristics, and enjoy the protection of the law to a considerable degree. It has been held, for instance, by the supreme court of Nebraska, in the case of Stateex rel. Sorensen v. Security Bank, 121 Neb. 521, 237 N.W. 620, that the proceeds of such insurance is money of the United States until it reaches the person entitled thereto, and that money paid to the administratrix of the insured, and by her deposited in a bank which subsequently failed, may be recovered in full from the assets of the insolvent institution, being entitled to priority of payment under Federal statutes.
In my opinion, this court correctly decided the question presented In re Cross' Estate, 152 Wn. 459, 278 P. 414, in holding that the proceeds of war risk insurance paid by the United States to the administrator of the estate of the insured veteran should be distributed to those heirs of the insured living at the time of the distribution of the money and entitled to take as heirs at law of the insured.
It is, of course, true, however, as observed in the *Page 586 
majority opinion, that the supreme court of the United States, in the case of Singleton v. Cheek, 284 U.S. 493, 76 L.Ed. 419,52 S.Ct. 257, 81 A.L.R. 923, held that the proceeds of war risk insurance coming into the estate of the insured because of the death of the beneficiary or beneficiaries prior to payment of the entire amount of the insurance, should be distributed to the heirs of the insured, such heirs to be determined as of the date of the death of the insured. I agree with the majority in holding that this court is bound by the decision of the supreme court of the United States, and that the opinion of this court In reCross' Estate, supra, must therefore be overruled, in so far as the same is in conflict therewith. The rule laid down in theSingleton case is not in accord with the spirit of the statute, as, under the rule, thousands of dollars of war risk insurance have been paid to persons nowise related to the insured soldier, and diverted from his dependents and kinfolk, for whose benefit and protection the law was enacted.
I am not, however, in accord with the opinion of the majority in holding that the beneficiary of such a policy may, by will, bequeath money due under the policy but not paid to the beneficiary prior to his death. I concede that the majority rule is otherwise, but I am so strongly of the opinion that the minority rule is the better, that, for my part, I am convinced that the latter rule should be followed by this court.
The underlying purpose of war risk insurance, as declared by the Congress, was the protection of the insured and his dependents. This is clear not only from that portion of the act above quoted, but from other provisions of the law protecting the proceeds of war risk insurance against assignment and claims of creditors. Of course, payments made to a beneficiary become absolutely his property, but in my opinion, there *Page 587 
is no basis in the law for holding that such a beneficiary can by his will divert such portion of the insurance money as still remains in the possession of the government, from the heirs at law of the deceased veteran, who was, by the original policy, insured for his own protection and for the protection of his dependents.
In the opinion of the majority, the two cases which, in my opinion, state the better rule, are cited, as well as the more numerous cases laying down the rule which the majority declare to be the law in this state. In the first of the two cases cited,In re Knight's Estate, 226 Mo. App. 1042, 48 S.W.2d 71, it appeared that the soldier was insured for ten thousand dollars, naming his mother and a half-brother as beneficiaries. The soldier died April 14, 1918, leaving, beside his mother and half-brother, three maternal aunts. Installments of the policy were paid to the mother and half-brother in equal shares until the death of the mother, and after her death, to the brother alone. After the death of the insured, his mother married a second time, and upon the death of the insured's brother, it appeared that the latter had, by his will, bequeathed all unpaid installments of the insurance money to one of his aunts. The balance of the proceeds of the insurance was then, by the Federal government, paid into the estate of the insured, the trial court distributing the same one-third to the surviving husband of the mother of the insured, and the remainder to the insured's aunts, who were sisters and heirs of the insured's mother. If the rule which it seems to me is the correct one had been adopted by the supreme court of the United States, the man whom the mother of the insured married after the insured's death would not have received any portion of the insurance, and in my opinion, he had no right to receive any portion thereof, and such proceeds would have been paid to the maternal aunts of the veteran, who, *Page 588 
in justice and equity, and it seems to me, in law, were entitled to receive the same. In any event, the Missouri court held that the half-brother of the insured and the beneficiary under his policy had no such vested interest in the unpaid installments of the insurance money as would authorize him to dispose of that money by will. The money was still in the possession of the Federal government, the beneficiary could not assign it, doubtless it could not be reached by judicial process and applied to the payment of the beneficiary's debts, and, in my opinion, the court rightly held that he could not dispose of it by will.
In another Missouri case, State ex rel. Lankford v. Fidelity Deposit Co., 228 Mo. App. 953, 74 S.W.2d 904, it was again held that a beneficiary under a policy of war risk insurance had no vested interest in unpaid installments thereof, and could not dispose thereof by will. Certain Federal cases are cited in support of this proposition.
On this phase of the case, I am constrained to dissent from that portion of the majority opinion which holds that Louis Verchot, the father of the insured, could by his will make a valid testamentary disposition of the installments of the policy of war risk insurance issued to Louis Satollie Verchot, which installments had not been paid to the father, Louis Verchot, during his lifetime. As to this matter, we are not bound by any decision of the supreme court of the United States, but are free to declare the law as we understand it. *Page 589